JUDGE GETTLEMAN
MAGISTRATE JUDGE HARJANI

RECEIVED JN
9/18/2019
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

19CV6443

PC SCAN PC 1

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

DETRICK CULLUM, )
    Plaintiff )
  )
vs. )  Case No.
  )
THE STATE OF ILLINOIS, ) 42 U.S.C. ss 1983
Hon. DANIEL J. PIERCE, Hon. )
SHELDON A. HARRIS, Hon. JOHN B. )
SIMON (Justices of the Appellate )
Court First District) Hon. Noreen )
Valeria-Love (retired) Hon. Geary )
kull (Trial court Judges) )

## COMPLAINT

    Now Comes, Detrick Cullum, Plaintiff, pro se, by and through himself, pursuant to 42 U.S.C. ss 1983, alleging that several of his federal rights under the Fifth amendment, due process (procedural and substantive) were violated, in addition to his Fourteenth amendment right to equal protection of the law. Plaintiff also alleges that several of his State constitutional rights under the Fourteenth amendment were violated, including but not limited to his right to due process (procedural and substantive) (Incorporation by reference due process) and equal protection of the law. Plaintiff asks this court to use the doctrine of stare decisis in evaluating this claim

.1

# FEDERAL JURISDICTION

Jurisdiction is based on 28 U.S.C. ss 1331, a civil action arising under the United States Constitution or other federal law.

## PARTIES INVOLVED

A. Plaintiff
   Full Name: Detrick Cullum
   P.I.N.: M22036
   Address: Illinois River C.C. 1300 W. Locust, Canton, IL. 61520

B. Defendants
   Defendant #1: State of Illinois

   Defendant #2: Daniel J. Pierce
   Job Title: Appellate Court Justice, First District
   Work Address: Appellate Court First Judicial District

   Defendant #3: Sheldon A. Harris
   Job Title: Appellate Court Justice, First District
   Work Address: Appellate Court First Judicial District

   Defendant #4: John B. Simon
   Job Title: (Retired) Appellate Court Justice, First District
   Work Address: Appellate Court First Judicial District

Defendant #5: Noreen Valeria-Love
Job Title: (Retired) Circuit Court Judge
Work Address: Circuit Court Forth Judicial District
            1500 Maybrook Dr., Maywood, IL. 60153


Defendant #6: Geary W. Kull
Job Title: Circuit Court Judge
Work Address: Circuit Court Fourth Judicial District
            1500 Maybrook Dr., Maywood, IL. 60153

## LITIGATION HISTORY

A.

Plaintiff has not brought any prior lawsuits, state or federal court, dealing with the same facts involved in this case. Plaintiff has only initiated criminal and civil-post-remedy and collateral proceedings regarding the facts in this case. They are a Direct appeal, Petition for Leave to Appeal to the Illinois Supreme Court, a Petition For Relief From Judgment (2-1401), a Mandamus, and a Supervisory order to the Illinois Supreme Court. Plaintiff also filed a Federal Habeas Corpus Petition attacking his conviction as a whole which is still pending. (See Ex. 1 S. Ct. Denials)


B. Plaintiff has brought approximately 12 other Federal lawsuits while incarcerated. They are listed below:


C. Name of Case, Court and Docket Number:
1. Cullum v. County of Cook, N.D. IL 11 CV 1146
   Claim: Deliberate indifference
   Disposition: Settlement

3

2. Cullum v. Provence etal., SDIL 12-cv-01146
   Claim: Deliberate indifference
   Disposition: Defendants found Not guilty appealed Cullum v provence
   7.Cir. 16 cv 1084 (settlement)

3. Cullum v. Loevy and Loevy Law Firm, NDIL 12-cv-09143
   Legal Malpractice
   Voluntary Dismissal

4. Cullum v. Godinez etal., CDIL 13-cv-01599
   Retaliation
   Transferred S.D. IL (see below)

5. Cullum v. Godinez etal., SDIL 14-cv-00012
   Retaliation
   Settled

6. Cullum v. Cook County, NDIL 14-cv-07346
   Conditions of confinement
   Dismissed Part of settlement

7. Cullum v. Will County, NDIL 15-cv-00213
   Conditions of confinement
   Dismissed without Prejudice (Forgot complete litigation history)

8. Cullum v. Crary etal., CDIL 16-cv-03058
   retaliation
   Dismissed with Prejudice (Deemed Frivolous)

4

9. Cullum v. Davis etal., SDIL 15-cv-00057
   Excessive Force
   Dismissed with Prejudice (missed one case in litigation history)

10. Young v. County of Cook, NDIL 06-cv-00552
    Strip Search
    Settlement

11. Cullum v. Mclaughlin, CD IL 18cv04051
    Conditions of confinement
    Dismissed with prejudice (Did not mention a settlement outside 12 months)
                                                        ↓↓ Same

12. Cullum v. Perez, CDIL 18-cv-04309
    Excessive Force
    Sua Sponte Dismissed with prejudice (Did not Mention a settlement)

13. Federal Habeas Corpus: Cullum ·v. Hammers, 18-cv-2219
    Pending

# STATEMENT OF CLAIM

1  The instant claim arises from a series of Federal and State
2  Constitution deprivations by the named Justices of the Appellate
3  court for the First Judicial District and the named Judges of the
4  Circuit Court of Cook County Fourth Municipal District, or the
5  State of Illinois
6  While exercising his right to appeal his conviction, Plaintiff
7  incurred several violations of Federal and State Constitutional
8  rights, including but not limited to violation of Due Process,
9  (Procedural and Substantive) Equal Protection of the law, and
10 incorporation by reference Due process. Plaintiff sincerely requests
11 this Honorable Court's utmost patience as he endeavors to explain
12 how his Federal and State Constitutional rights were violated.
13                    Background Story
14   Plaintiff Detrick Cullum was convicted after a bench trial of,
15 relevantly, aggravated criminal sexual assault, aggravated Kidnap-
16 ping and lesser offenses. The offenses arose out of the alle-
17 gation that Cullum had somehow confined a young lady he had
18 met at a party earlier by his reckless drunk driving, prompting
19 her to think that he would slow down if she offered something
20 sexual. She testified that she made a voluntary offer that if he
21 slowed down, she would perform oral sex on him. She testified
22 that she placed "the tip of her mouth on his penis", then thought
23 to herself that "he may have AIDS, anything"., and decided
24 not to continue. She testified that the idea of oral sex was
25 not his, that when she told the detective Cullum said, "if you give me head
26 I'll take you home", wasn't true, that he was not "physically

.1.

83 you consecutive sentences. I did so because the appellate court
84 said I had to do that, okay. (Ex.2 B 33-37)
85    Defense counsel filed a motion to reconsider sentence, asking
86 that the court modify Cullum's sentences to six years on the aggr-
87 ravated criminal sexual assault conviction, to be served consecutively
88 to the six-year aggravated kidnapping sentence and other charges.
89 Counsel argued that such a sentence would be appropriate, considering
90 that the court had initially given Cullum "two ten-year terms to run
91 concurrent". (Ex2 C2) The court denied the motion. (Ex2 C3)
92                    Appeal After Remand
93    On appeal, Cullum argued that increasing his aggregate sentence
94 by six years on remand was an abuse of discretion, because that
95 much of an increase was unnecessary for compliance with the appel-
96 late court's mandate, and that the new sentences were the result
97 of vindictiveness, as the judge told Cullum that his aggregate
98 sentence increased by six years simply because he appealed.
99 Cullum also argued that the concurrent sentences initially imposed
100 by the trial court should be reinstated, because the void sentence
101 rule was abolished in People v. Castleberry, 2015 IL 116916, and his
102 case was still on direct appeal when Castleberry was decided.
103    The appellate court held that Castleberry did not apply to Cullum's
104 situation because his original sentences were "voidable not void",
105 which was the basis of its remand, and because Cullum's sentences
106 had not been individually increased. They also held that the court did
107 not abuse its discretion and that the new sentences were not vin-
108 dictive because they had not been individually increased.
109 People v. Cullum, 2016 IL App (1st) 141546-U, 18-20, 23-25.
110 Rehearing denied September 12, 2016. (Ex 3 App. order), Filed PLA.
                          9

111 Cullum, before the appellate court reached its decision on septem-
112 ber 12, 2016, Filed a Petition For relief From judgment on March 9,
113 2016, apprising the trial court, Geary W. Kull, that the "void sentence
114 rule" had been abolished by Castleberry, and that the appellate
115 court pursuant to Castleberry, no longer had the authority to remand
116 a case For imposition of consecutive sentencing based on
117 that rule. The trial court sua sponte dismissed the petition
118 on July 8, 2016. Cullum Filed a notice of appeal on November 14,
119 2016. The Office of the State Appellate Defender was appointed on
120 December 2, 2016.
121    On may 16, 2018, Counsel For the petitioner Filed a motion for
122 leave to withdraw as counsel on appeal pursuant to Illinois law,
123 and Pennsylvania V. Finley. Counsel argued that the petitioner's claim
124 was barred by res judicata, and therefore without merit.
125 Petitioner responded that Castleberry still applies to his case
126 and because the appellate court Failed to apply the rule of law,
127 the U.S. Supreme Court dictates that when newly decided
128 constitutional law isn't applied to an applicable case, it violates
129 basic norms of constitutional adjudication, and the claim is not
130 barred by procedural default or res judicata.
131    On september 28, 2018, the appellate court affirmed Cullum's
132 conviction, stating that they agree with the plaintiff's counsel,
133 in that his claim is barred by res judicata. Appellate Court
134 order appended to this petition. (Ex. 4)
135  * Petitions to the Illinois Supreme Court *
136 Cullum filed for Petition For Leave to Appeal Following his Remand
137 appeal denial, People V. Cullum 121410. Cullum filed For Petition
138 For Leave to Appeal Following the denial of his 2-1401

10

27 Forcing" her to do the act, was not forcing her to continue
28 the act after she stopped, and equivocated whether she had
29 even done the act. This was all while he drove around in
30 a rental car that he took from his girlfriend without her
31 permission. (See record if interested) (K 105-106, K 152-153)
32   The trial Court, Noreen Valeria-Love found Cullum guilty
33 on all counts and imposed concurrent sentences of ten years
34 on the convictions for aggravated criminal sexual assault and
35 aggravated kidnapping, and lesser concurrent sentences on
36 the other convictions. (R. 024-25)
37   On direct appeal, the appellate court, Justices Pierce,
38 Harris, and Simon, held that the sentences were void because
39 the aggravated criminal sexual assault sentence had to be
40 served consecutively to the other convictions, pursuant to
41 730 ILCS 5/5-8-4 (d)(2). The court ordered the case be
42 remanded to the trial court for a new sentencing hearing.
43 People v. Cullum, 2013 IL App (1st) 111776-U, 74.
44             Resentencing
45 At the resentencing hearing, defense counsel argued that, if
46 the court had "initially intended to give Cullum what would essen-
47 tially be a ten year sentence", but now the sentences had to be
48 consecutive, the closest sentence to the trial court's "initial
49 intention" would be "six plus six consecutive". (Ex.2 R. B2)
50 Counsel tried to point out that Cullum had engaged in pro-social
51 activities since the original sentencing hearing — such as
52 "substance abuse programming and schooling" — but the prose-
53 cutor objected that the only the "factors at the original sen-
54 tencing" were relevant, and the court agreed. (Ex.2 R.B3)

55 However, the court allowed Cullum to give a statement in allocu-
56 tion, during which Cullum told the court about how he had been
57 occupied with studies, programs, inventions, and elaborate business
58 ventures" while in prison. He also stated that he wished to "formally
59 apologize" to the complainant for his conduct on the evening of the
60 incident that led to the charges. (Ex. 2 B17) The prosecutor again ob-
61 jected.

62    The court re-sentenced Cullum to a ten-year sentence for the
63 aggravated criminal sexual assault charge, and a six-year sentence
64 for the aggravated kidnapping conviction to be ran consecutive-
65 ly. (Ex 2 B18-19) At the conclusion of the resentencing hearing
66 the following occurred:

67

68 Cullum: May I ask one more question?

69 Judge: Yes, sir

70 Cullum: Why such a— I mean what have I done since you im-
71 posing ten years concurrent to making me deserve 16 years,
72 Judge?

73 Judge: You haven't done anything except you appealed it to the
74 appellate court, and the appellate court mandated that I give you
75 a consecutive sentence. You did nothing. The appellate court said,
76 Judge, you made a mistake. He should have been sentenced to a
77 consecutive sentence so I did what the appellate court told me I
78 had to do.

79 Cullum: Yeah, but you obviously found certain evidence in mitigation
80 and aggravation ... in which to rule ...

81 Judge: First of all, understand something. I don't make the senten-
82 cing laws. The People in Springfield do that. Now I have to give

8.

139  Petition for relief from judgment. People v. Cullum 124233. Cullum,

140  pursuant to Illinois Supreme Court Rule 383, asked the Illinois Supreme

141  Court to issue a supervisory order directing the appellate court to recon-

142  sider their decision in his case in light of Castleberry, as it had done

143  in many other cases. M.D. 014198 - Cullum v. Pierce. Cullum, pursuant to

144  civil code of Procedure 735 ILCS 5/14-101 et seq. filed a Petition of

145  Mandamus to address the issues. Cullum v. Kull, M.D. 014097.

146  In each of these petitions Cullum asked the Illinois Supreme Court to

147  hear his case, or direct the appellate court to follow its decision made

148  in Castleberry. In each of these petitions the Illinois Supreme Court

149  denied his requests. (see Ex 1 Petition denials)

150  Accordingly, Plaintiff has explored every State remedy available to ad-

151  dress these constitutional violations, which have been denied at every level.

152  Plaintiff now turns to this Honorable Court requesting that it exercise its

153  authority pursuant to 28 U.S.C ss 1331, to address the violation of his

154  Federal and State Constitutional rights, under 42 U.S.C. ss 1983.

155                          ARGUMENT

156  In argument Number one (#1), Plaintiff shall demonstrate how the

157  named Defendants violated his Federal and State Constitutional rights i.e.,

158  Equal Protection of the Law, Procedural Due Process, Incorporation by reference

159  due process, and Substantive due process. (not in that order)

160  #1. This Court should grant relief requested in this 42 U.S.C. ss 1983

161  Petition to compel the Appellate Court Justices and the Circuit Court Judges

162  to follow established Federal, State, and U.S. Supreme Court law. And to clarify

163  that Plaintiff has rights under both the Federal and State Constitutions.

164  Persons possess both procedural and substantive due process rights, which

165  if violated may be redressed under section 1983. Butchers' Union Slaughter-

166  House Co. v. Crescent City Live-Stock Landing Co., 111 U.S. 746, 4 S.ct 652 (1884,

                          11

167    The central aim and purpose of due process doctrine is to assure
168 fair procedure when the government imposes a burden on an individual.
169 The doctrine seeks to prevent arbitrary government, to avoid mistaken
170 deprivations, to allow persons to know about and to respond to charges
171 against them, and to promote a sense of legitimacy of official behavior.
172    In People v. Castleberry, the Illinois Supreme Court overturned
173 People v. Arna, 168 Ill.2d 107 (1995), and abolished the void sentencing rule.
174 Finding that it rested on the faulty assumption that the circuit court's
175 Jurisdiction depended on legislative enactments. Castleberry, 2015 IL 116916,
176 14-19. Instead, a circuit court has Jurisdiction under the Illinois Constitution
177 over "all justiciable matters," and a judgment is "void" only when it was
178 entered without personal or subject matter jurisdiction. 2015 IL 116916,
179 15-18, Ill. Const. 1970 art. VI ss 9. Further, the State has no right to
180 challenge the circuit court's sentencing order on direct appeal, 2015
181 IL 116916, 24-26. Ill. Sup. Ct R. 604(a)(1)
182    Plaintiff argued in all referenced petitions to the Justices/Judges
183 that the appellate court's initial remand for resentencing must be reversed
184 because it was based on the void sentence rule abolished by
185 Castleberry, which was decided during the pendency of his resentencing
186 appeal. The appellate court ruled in the remand appeal, though, that
187 Castleberry does not apply because changing concurrent sentences to con-
188 secutive ones does not involve the "context of a sentence being increased",
189 agreeing with the State's argument. (EX. 3) People V. Cullum, 2015 IL App (1st)
190 141546-U, at 18, citing People V. Cole, 2016 IL App(1st) 141661 at 97. The
191 court further held, following cole, that the original sentencing order in
192 Cullum's case was voidable and not void, that - that was the reason
193 for remand, and that the sentencing order "falls outside the strictures
194 of Castleberry, which abolished the void sentence rule". Cullum, at 20.

17

195 The Appellate Court justices arbitrarily disregarded that the
196 propriety of Cullum's concurrent sentences was not something that
197 the State was permitted to raise on direct appeal regardless of whether
198 they are void or voidable, and that the appellate court's power
199 to interfere with the Circuit Court's judgment order, as it did in
200 Cullum's case, is not authorized by Supreme Court Rule 615(b).
201    In People v. Arna, 263 Ill. App. 3d 578, 589 (1st) Dist. 1994) the appellate
202 Court, sua sponte, vacated a defendant's concurrent sentences and ordered
203 the case be remanded for consecutive sentencing. The Illinois Supreme
204 Court affirmed the appellate court's ruling, stating that "[A] sentence
205 which does not conform to a statutory requirement is void," People v. Arna,
206 168 Ill. 2d 107, 113 (1995). In Castleberry, It. S. Ct. Court abrogated Arna,
207 described the void sentencing rule as "constitutionally unsound", and
208 abolished the rule in its entirety. 2015 IL. 116916, 19.
209    Despite the Illinois Supreme Court's clear directive in Castleberry,
210 the appellate court (Pierce, Harris, and Simon) arbitrarily described
211 the circuit court's original sentencing order in Cullum's case as
212 "voidable and not void," and that it "Falls outside the strictures of
213 Castleberry". Cullum, 2016 IL App (1st) 141546-U, 20. The appellate court
214 ignored that on page 4, at 11, of its 2016 order, (same) it said, "Notably,
215 we vacated the concurrent sentences imposed for aggravated
216 criminal sexual assault and aggravated kidnapping counts, which
217 were 'void' pursuant to 730 ILCS 5/5-8-4(d)(2)(West 2012) and
218 remanded the case to the trial court for resentencing defendant to
219 mandatory consecutive sentences for the two offenses. Id. at 75."(EX3
220 referencing its 2013 order, in which it granted the State's request
221 and remanded for a new sentencing hearing and the imposition of
222 of consecutive sentences. People v. Cullum, 2013 IL App (1st) 111776-U-7

13

223 Thus, either the appellate court Justices, 1) made a mistaken depri-
224 vation, in that what occurred was an honest mistake; or 2) they made
225 an arbitrary, vindictive, intentional deprivation. Plaintiff has no
226 other choice but to elect 2), not only did he argue that People v. Castle-
227 berry abolished the "void sentence rule", which they used as a catalyst
228 to remand his cause to the trial court for imposition of consecutive
229 sentencing, on direct appeal and in his 2-1401 appeal, but he brought
230 to their attention that IL. S. Ct. R. 615(b) states that the appellate
231 court's authority to alter a sentence is limited to reducing the
232 punishment imposed by the trial court". 2015 IL 116916, 24 (IL. S. ct. R.
233 615(b) ("on appeal the reviewing court may ... (4) reduce the punishment
234 imposed by the trial court"). They still ignored State law.
235    Here, although the individual sentences were not technically "increased"
236 on remand, Plaintiff's punishment — the amount of time he must serve in
237 custody — was dramatically increased, from 10 years at 85% to 16 years
238 at 85%. See, e.g., People v. Carney, 196 Ill. 2d 518, 531-536 (2001)
239 (acknowledging, in a case involving the application of Apprendi, that
240 the imposition of consecutive sentences subjects a defendant to increased
241 punishment, but does "not expose a defendant to punishment exceeding
242 statutory maximum for each conviction").
243 The ignoring of clearly established State law violates substantive
244 due process, and because the Plaintiff's rights were created by State law,
245 it becomes part of the due process of state law that is incorporated
246 into and is protected by Federal law.
247    When state "laws ... place substantive limitations on official
248 discretion and contain explicitly mandatory language sufficient to
249 create a liberty interest protected by the Fourteenth Amendment [their
250 violation is actionable under Section 1983". Hailstrom v City of Garder

251 City, 991 F. 2d 1473, 1482 (9th Cir. 1993)

252 Again, the appellate court knowingly changing its ruling from void to
253 voidable to intentionally deprive Plaintiff relief under Castleberry
254 shocks the conscience, as this is these are trusted officers of the
255 Court, and violates basic constitutional norms of adjudication.

256 Substantive due process is intended to safeguard individuals from
257 the arbitrary and capricious exercise of state power, ... [and]
258 when the plaintiff ... presents evidence from which a fact finder
259 could reasonably conclude that certain government officials ...
260 improperly interfered with the process... these actions... if proven
262 are sufficient to establish a substantive due process violation
263 actionable under Section 1983. Hoffman v. Lehman, 926 F. Supp. 510,
264 514-15 (M.D. Pa 1996)(Citing Daniels v. Williams, 474 U.S. 327, 331,
265 106 S. Ct 662, 665 (1986).

266 Also, in its attempt to recharacterize the original sentences as
267 "voidable", the appellate court disregarded that a "voidable judgment"
268 is one entered erroneously by a court acting within its jurisdiction
269 and is correctable on review only if a timely appeal is taken".
270 People v. Mescall, 379 Ill. App. 3d 670, 673 (2d. Dist. 2008) Citing People v.
271 Speed, 318 Ill. App. 3d 910, 914 (3d Dist. 2001).

272 Here, though, it was the State, and not Cullum, who challenged the
273 alleged error in the circuit court's sentencing order on direct appeal.
274 But the State is only permitted to appeal in specifically defined cir-
275 cumstances, pursuant to Rule 604(a)(1), and the State does not have the
276 right under that rule to appeal a sentencing order. Ill. Sup. Ct. R. 604
277 (a)(1); Castleberry, 2016 IL 116916, 21. Thus, even if the appellate
278 court was correct that the initial sentencing order was "voidable
279 and not void", the State still had no right to challenge it as such.

15

280 Rather, as the Illinois Supreme Court clearly stated in Castleberry,
281 "The remedy of Mandamus ... permits the State to challenge criminal
282 sentencing orders where it is alleged that the circuit court violated
283 a mandatory sentencing requirement ..." Castleberry, 2015 IL, 116916,
284 27. In addition, the appellate also disregarded the significance
285 of its own argument that it made in the 2016 Order. They find,
286 and I quote at length, "The trial court had authority to enter convictions
287 and sentences on the charged offenses, and its order sentencing defendant
288 to concurrent terms of 10 years for aggravated sexual assault and 6
289 years for aggravated kidnapping when it should have ordered the sentences
290 to be served consecutively was merely an error. See People v. Davis, 156
291 Ill. 2d 149, 156 (1993) ("Jurisdiction or power to render a particular judgment
292 carries with it the power to decide wrong as well as to decide right").
293 This error did not divest the court of its jurisdiction. See id. at 156. Once
294 jurisdiction is acquired, "no subsequent error or irregularity will oust the
295 jurisdiction thus acquired", and "a court may not lose jurisdiction because
296 it makes a mistake in determining either the facts, the law or both"). (Ex3)
297 Therefore, the order was "voidable" and not "void". But this is exactly what
298 Plaintiff was trying to apprise them of, it's as if they are double-speak-
299 ing, yet, the appellate court still usurped the position of the trial court.
300 Castleberry rescinded whatever authority that the Illinois Supreme Court
301 had given the appellate court to interfere with the trial court's senten-
302 cing order. Therefore, the appellate court acted without jurisdiction
303 and the Plaintiff's ~~sentence~~ consecutive sentences are void, as
304 a court without jurisdiction ordered them. Cullum, 2016 IL App (1st)
305 141546-U, 20. A judgment or decree may be void where a court
306 has exceeded its jurisdiction. Amstrong v. Obucino, (1921), 300 Ill.
307 140, 142-43, 133 N.E. 58, People v. Davis, 156 Ill. 2d 149, 156 (1993)

308 Specifically, the appellate court lacked subject matter jurisdiction.
309 Subject matter jurisdiction refers to a court's power "' to hear and
310 determine cases of the general class to which the proceeding in question
311 belongs. Castleberry, 2015 IL 116916, at 12, citing (quoting Belleville
312 Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325, 334 (2002)).
313 The proper venue to address an alleged error committed by the
314 circuit court would be the Illinois Supreme Court, through Mandamus,
315 as the court clearly dictated. As in Castleberry's case, The State's
316 argument in the appellate court that consecutive sentencing pursuant
317 to 730 ILCS 5/5-8-4 (d)(2) (West 2012) should be applied to Cullum's
318 sentence was not brought to sustain the judgment of the circuit court.
319 "It was, instead, a new and different issue brought with a view to
320 'lessening the rights of a defendant'." Castleberry, at 23.
321     The appellate court allowing the state to challenge Cullum's con-
322 current sentences and remanding the cause to the circuit court for the
323 imposition of consecutive sentencing directly violated procedural
324 due process. "[A] procedural due process claim challenges the procedures
325 used in effecting a deprivation, [and] a substantive due process claim
326 challenges the governmental action itself." That is the reason that [a]
327 plaintiff may bring suit under ss 1983. Zinermon v. Burch, 494 U.S. 113,
328 124, 110 U S.Ct. 975, 982 (1990), Sierra Lake Reserve v. City of Rocklin,
329 938 F.2d 951, 956 (9th Cir. 1991). Procedural due process forbids the
330 use of legal process for a wrongful purpose. Cook v. Sheldon, 41 F.3d
331 73, 80 (2d Cir. 1994)
332     Plaintiff also brought to the appellate court's attention in his
333 motion for rehearing that their fellow jurists ~~Feache~~ From another
334 division reached the exact opposite conclusion than theirs. That
335 decision was in Taurean Lewis, 2015 IL App (1st) 130998-UB

17

336 Plaintiff apprised them that," in Lewis the circuit court imposed concur-
337 rent 10-year sentences, but consecutive sentences were required.
338 On appeal, the State relied upon Arna and argued that the appellate
339 court had authority to correct the "void" sentences. The appellate court
340 agreed with the State, and as in Cullum's case, it vacated Lewis's
341 sentences and remanded for resentencing. 2015 App (1st) 130998-U, 70, 73.
342 Castleberry was decided several months after Lewis. In March 2016,
343 the Illinois Supreme Court allowed Lewis to file a pro se late petition
344 for leave to appeal. People v. Lewis, No. 120603 (Ill. Sup. Ct. Mar. 25, 2016)
345 On May 25, 2016, the Supreme Court denied leave to appeal, but entered
346 a supervisory order directing the appellate court to vacate its August
347 24, 2015 Rule 23 Order and reconsider its judgment in light of
348 Castleberry. People v. Lewis, No. 120603 (Ill. S. Ct. May 25, 2016)
349 (leave to appeal dispositions). (Justice Harris is a judge in the Lewis case)
350     The appellate court then entered a new unpublished order in Lewis,
351 2015 IL App (1st) 130998-UB, reversed its prior decision and held
352 that, "[G]iven the abolition of the void sentence rule, the state is barred
353 from challenging defendant's sentence in this appeal." 2015 IL App (1st
354 130998-UB, 73. (EX.5 Pl. petition for rehearing)(EX.6 Lewis case)
355     Here, Plaintiff demonstrated with direct evidence to the appellate court
356 that he was warranted relief, as the Illinois Supreme Court admon-
357 ished another appellate court division in its district to reconsider
358 its decision in light of Castleberry. Plaintiff's situation is the exact
359 same as Lewis's, and his case is indistinguishable from Arna,
360 which abolished the void sentence rule. Plaintiff could cite at least
361 20 other cases where the appellate courts were admonished by
362 the Illinois Supreme Court to reconsider their decisions in light of
363 Castleberry, however, elects not to. The fact of the matter is that

12

4 When the appellate court (Pierce, Harris, and Simon) refused to apply
65 Castleberry to Plaintiff's case in light of other decisions, it denied
66 him equal protection of the law. The equal protection clause of
367 the Fourteenth Amendment requires the same treatment for similarly
368 situated persons. City of Cleburne, Texas v. Cleburne Living Center, 473
369 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985). This is a clear statement of
370 the basic principle of the equal protection clause, and is the modern
371 version of Aristotle's ancient principle of equality, that equals be treated
372 equally, and that only inequalities among persons will serve to justify
373 different treatment." Aristotle equated inequality with injustice: "both
374 the unjust man and the unjust act are unfair or unequal...."
375 Nicomachean Ethics, BK. V, 3.
376     Plaintiff also brought to the attention of the appellate court
377 and circuit court Judge Geary W. Kull through his Petition for relief from
378 judgment, 2-1401, and its appeal, that the United States Supreme
379 Court determined that while a case is being tried and until direct
380 review of the case is completed, any new judicially declared rules apply
381 to the case on direct review, Griffith v. Kentucky, 479 U.S. 314, 322, 107
382 S.Ct. 708, 93 L.Ed. 2d 649 (1987), and that, "failure to apply a newly declared
383 constitutional rule to criminal cases pending on direct review violates
384 basic norms of constitutional adjudication", Deichmueller Construction
385 Co. v. Industrial Comm'n, 151 Ill. 2d 413, 416, 177 Ill. Dec. 446, 603 N.E. 2d
386 516, 518 (1992), and a "new rule for conduct of criminal prosecutions is to
387 be applied retroactively to all cases, state or federal, pending on
388 direct review or not yet final at the time of decision. Selective
389 application of a new rule violates the principle of treating
390 similarly situated defendants the same. Griffith v. Kentucky, 107 S.Ct.
391 708 (1987) Further, the United States Supreme Court also held that

392 "When a court has applied a rule of law to the
393 litigants in one case it must do so with respect
394 to all others not barred by procedural requirements
395 or res judicata", Insituform Technologies, Inc. CAT
396 Contracting, Inc. 10 Fed. Appx., 871, Cert granted vacated,
397 122 S.ct, 2322, 535 U.S. 1108.

398     Thus, There are several deprivations committed
399 by the appellate court Justices, Pierce, Harris, and
400 Simon that offend Plaintiff's Federal and State Con-
401 stitutional rights under the due process clause
402 of the Fifth Amendment, made applicable to the
403 States through the Fourteenth Amendment. (Proce-
404 dural and substantive due process rights) In ad-
405 dition to Fourteenth Amendment Violations under
406 the equal protection of the laws doctrine.
407 The appellate court deliberately and arbitrarily
408 recharacterized their previous "void" sentence
409 ruling as "voidable", therefore, making it appear as
410 if they intended to deprive Plaintiff of the relief as
411 determined in Castleberry. They also allowed the
412 Remand for imposition of consecutive sentences
413 at the state's behest, therefore, enforcing inappro-
414 priate procedure in which to appeal a circuit court
415 Order. This in turn violated procedural and substantive
416 due process rights. Further, they ignored IL. Sup. Ct. R. 615(b),
417 and Rule 604(a), as well as United States Supreme Court laws
418 which expressly prohibit the actions that they engaged in to violate
419 plaintiff's rights. Therefore, it is within this Court's jurisdiction to order
that the appellate

420 Court or trial court initiate the proceedings in which
421 to rightfully apply People v. Castleberry, 2015 IL 116916 App
422 (1st) Dist., which abolished the void sentence rule, to the
423 Plaintiff's case, as the appellate court's and State's actions
424 and inactions led to vindictive sentencing. (See argument #2)
425 "Where the violation of state law causes the deprivation of
426 rights protected by the constitution and statutes of the United
427 States, a cause of action is stated under 42 U.S.C. ss 1983".
428 Wirth v. Surles, 562 F.2d 319, 322 (4th Cir. 1977).
429
430    In argument Number two (#2), Plaintiff shall demonstrate how
431 the appellate court remanding his case back to the trial court for
432 imposition of consecutive sentences at the States behest led to
433 vindictive sentencing, in violation of the Fourteenth Amendment, and
434 resulted in Plaintiff not receiving a fair sentencing hearing.
435        Original Sentencing Hearing - June 21, 2011
436    The prosecutor told the court at the outset of the original
437 sentencing hearing that the aggravated criminal sexual assault
438 conviction would have to run consecutively to the aggravated crimi-
439 nal sexual assault Kidnapping. The other counts would be served con-
440 currently to the aggravated Kidnapping. (R. 05) Cullum's background
441 included previous drug offenses for which he had received proba-
442 tion and bootcamp. His other offenses were misdemeanors in which he
443 served five days in jail. (C. 16-79; R. 07-8) Although Cullum had
444 never been to prison before the prosecutor argued that he was
445 "a danger to society" and recommended a lengthy prison sentence.
446 (R. 09)
447    Defense counsel argued that the aggravated criminal sexual

448 assault and aggravated kidnapping should be served concurrently.
449 She argued that the aggravated kidnapping charges should merge
450 into the aggravated criminal sexual assault convictions because
451 the "force or threat of force in this case was that kidnapping".
452 (R.10)(O40)

453    Defense counsel also pointed out that Cullum was only 23 years
454 old and had never before been to prison. Counsel argued that "six
455 years at 85 percent is still a very considerable sentence for a young
456 man, who based on the State's case, exercised poor judgment... in
457 large part as a result of drugs and alcohol." (R.011) Also, Cullum
458 had attended Harold Washington College for several semesters and had
459 "hopes and dreams for the future". (R.011-12) Cullum's mother and father
460 both testified as mitigation witnesses for several the defense,
461 and Cullum gave a statement in allocution in which he denied forcing
462 himself sexually upon the complainant. (R.12-21)
463    The judge chastised Cullum for not expressing "any remorse for
464 what happened that evening. It's all everybody else's fault." (R.022)
465 The judge (Noreen Valeria-Love) agreed with defense counsel regard-
466 ing the merger of charges and rejected the State's argument that
467 consecutive sentences were required, because the offenses were
468 not "separate acts" but were instead "all a part of one continuous
469 act that particular evening". The State did not object. (R.023)
470 The judge imposed concurrent sentences of ten years on the three
471 convictions for aggravated kidnapping and three ten years on the
472 three aggravated criminal sexual assault convictions, among other
473 convictions on several lesser offenses. (R.024-25)
474    Trial counsel filed a motion to reconsider sentence, and the court
475 denied it. (C.5, 186) Cullum appealed. (C.188)

22

476

477 On direct appeal, the appellate court, (Pierce, Harris, and Simon),
478 ordered that several of the convictions be merged into single offenses,
479 and that two of the three aggravated criminal sexual assault charges be
480 vacated, because they were based on a single act of penetration.
481 2013 IL App (1st) 111776-U, 73. They also ruled that the remaining
482 aggravated criminal sexual assault conviction would have to be served
483 consecutively to the other convictions, pursuant to 730 ILCS 5/5-8-4
484 (d)(2). The appellate court then ordered that the case be remanded to
485 the trial court for a new sentencing hearing. Cullum, 2013 IL App (1st)
486 111776-U, 75.

487 Re-Sentencing - April 21, 2014

488 The re-sentencing proceedings began like this:
489

490 Judge (Noreen Valeria-Love): This is not a resentencing. The sentencing
491 stands. The only issue here is what merges into what. This is not a
492 resentencing.
493 Prosecutor: And I think that two of the counts should run consecutive.
494 Judge: Yes, they should run consecutive. So this is not a resentencing (EX2
495 B2)

496 At this point defense counsel remarked that the Appellate Court had
497 remanded the case for a "resentencing hearing" because the concurrent
498 sentences were "completely void". (EX2 B2) Counsel argued that, if the court
499 had "initially intended to give what would essentially be a ten year
500 sentence," but now the sentences had to be consecutive, the closest sentences
501 to the court's "initial intention" would be "six plus six consecutive". (EX2 B2)
502 The judge responded, "No, it's not. No, it's not. (EX2 B3) After this, the
503 following occurred.

504  Judge: Okay. So with respect to the sentencing, that's fine. What's the
505  additional mitigation he wants to provide?
506  Defense Counsel: Judge, I know that he was – he has participated in a
507  drug program and schooling since he has been in I DOC.
508  Prosecutor: The State would object because it should be the factors
509  at the original sentencing.
510  Judge: Absolutely. that has no bearing on his sentencing because that
511  was – this is post his conviction. That's fine. Bring him out. I am going to
512  make him aware that's not going to make a difference.
513  Defense Counsel: That's fine, Judge.
514      After Cullum was brought out of the lock-up, defense counsel
515  requested a continuance for the "new sentencing hearing". When the
516  judge asked why it could not take place right away, defense counsel
517  responded that Cullum would like to present the court "with mitigation
518  since the time that he has been in the Department of Corrections."
519  (Ex. B4) The judge stated, "It's not relevant."(Ex. B4) Defense Counsel
520  added that Cullum had various "issues that he would like to bring
521  before the court to make them apart of the record".(Ex. B4)
522      At this point the judge and Cullum engaged in a lengthy discussion
523  about the issues Cullum wished to bring to her attention. (R. B4-10)
524  He stated that he wished to file a "Motion for reduction of sentence",
525  which the judge told him was premature as she had not yet sentenced
526  him, and told him after she resentenced him, he could "file the paperwork"
527  asking her to reconsider the sentence. (R. B 10-11)
528      The judge asked defense counsel, "Now why is it again we are not
529  going forward?" Counsel responded, "Judge, if Mr. Cullum is satisfied
530  with where we stand, I am ready to proceed to sentencing." (R. B11)
531  Cullum stated that he was not ready, and that he had a "myriad of issues"

24

532 that he wished to raise. (B12) The judge told him that he could not
533 raise those issues because he was only there for resentencing, and
534 admonished him that after he was sentenced, that he would have 30
535 days to raise all of those issues to the appellate court. (B13)
536    After further discussion with Cullum the judge asked whether he had
537 "any additional mitigation" that he wished for her to consider". That was not
538 considered in the first hearing". (R. B15) Defense Counsel interjected, "No,
539 Judge". (R.B16) The prosecutor added that the State "presented all the aggra-
540 vation previously." (R B16) The judge gave Cullum the opportunity to say
541 anything that he "failed to indicate" ... in the first sentencing hearing"
542 (R. B16) Cullum stated that he would "try to give mitigation of ... how
543 I have been occupying my time". He had been in substance abuse
544 programs, had maintained a B average at school, had been "creating
545 inventions" and planning "business ventures". He had been studying law",
546 (R. B16 Ex2) Cullum also told the judge that he had reflected upon his
547 "actions within this situation" and wished the complainant were present
548 so that he "could formally apologize to her" for his conduct on that evening".
549 He had "learned during the drug treatment program to be "empathetic" toward
550 another". He also now recognized that he had "brought a lot of things
551 upon himself, and told himself that he was "not actually mad that he
552 was incarcerated", but "just upset" that it took him to ~~be~~ <sup>became</sup> incarcerated
553 to have the "mindset" that he now has to make him want to be a
554 "better" him". (Ex2, B17)
555       When Cullum added that he had "been practicing learning French",
556 the prosecutor interrupted, "Judge, I will object to all of this as post-"
557 The judge replied, "This is post, yes. Okay. Anything else, Mr. Cullum?"
558 (Ex2, B17) Cullum stated that he wished he could have brought in
559 "character witnesses" in mitigation, as he had wanted to bring them

25

560 last time but for some reason he could not." (EX. 2 B 17-18)

561　　The prosecutor pointed out that Cullum's mother and father

562 testified as mitigation witnesses "the last time", and the judge

563 recalled that they had done so. (EX 2, B 18) The following then occurred:

564　　　　Judge: Here is the thing about it. You know you say now

565 that you kind of have come to terms with these things, and you are

566 not mad that you were incarcerated. And again, it's kind of like

567 that I am not sorry that I did what I did, I am just sorry that

568 I gotta to go to jail for it. That's the kind of attitude.

569　　　　Cullum: Not at all, Ma'am.

570　　　　Judge: So, you know, maybe some lessons will be learned.

571 I don't know if they will or not, but the original sentence as to count

572 1 [Aggravated Criminal Sexual Assault] was ten years Illinois Depart-

573 ment of Corrections. The sentencing will remain at ten years ... and

574 that, sir, will carry with it three years of mandatory supervisory

575 release period.

576 Counts 2 and 3 will merge into count 1. As to Count 4 [Aggravated

577 Kidnapping], it will be six years in the Illinois Department of Correc-

578 tions. That is to run consecutive to the 10 years [Count 1]. (EX 2 18-19)

579 The judge noted that both Counts 1 and 4 would be served at 85%,

580 and Counts 5, 6, and 7 would merge into count 4, and sentenced him

581 to lesser concurrent sentences. (EX 2, B 19-20)

582　　After additional discussion between Cullum and the Judge, the

583 following occurred:

584　　　　Cullum: May I also ask one more question.

585　　　　Judge: Yes, sir.

586　　　　Cullum: Why such a - I mean what have I done since you impos-

587 ing ten years concurrent to making me deserve 16 years, Judge?

26

588    Judge: You haven't done anything except you appealed it to the
589 Appellate Court, and the Appellate Court mandated that I give you a
590 consecutive sentence. You did nothing.

591    The Appellate Court said, Judge, You made a mistake. He should have
592 been sentenced to a consecutive sentence so I did what the Appellate
593 Court told me what I had to do.

594    Cullum: Yeah, but you obviously then - you obviously found certain evi-
595 dence in mitigation and aggravation ... In which to rule -

596    Judge: First of all, understand something. I don't make the senten-
597 cing laws. The People in Springfield do that. Now I have to give con -
598 secutive sentences, I did so because the Appellate Court said I had
599 to do that. Okay. (Ex.2, B:33-37)

600    Defense Counsel filed a motion to reconsider sentence, asking
601 that the court modify Cullum's sentences to six years on the aggra-
602 vated criminal sexual assault conviction, to be served consecutively
603 to the six-year aggravated kidnapping sentence and other charges.
604 Counsel argued that such a sentence would be appropriate, considering
605 that the Court had initially given Cullum "two ten-year terms to
606 run concurrent". (Ex2 c2) The Court denied the motion. (Ex2 c3)
607 A.)                    ARGUMENT

608 #2. This Court should exercise its jurisdiction given to it by the
609 United States Constitution and Federal laws to compel the appellate
010 court justices, Pierce, Harris, and Simon, and trial Court Judge,
011 Noreen Valeria-Love, to follow State law, as their refusal to follow
012 them has led to vindictive sentencing and denial of a fair sentencing
013 hearing in violation of the Plaintiffs State and Federal Constitutional rights.
014
015

27

616    In 2011, Detrick Cullum was sentenced to concurrent ten-year
617 sentences for aggravated criminal sexual assault and aggravated
618 kidnapping, along with lesser concurrent sentences for several other
619 offenses. (R.024-25) In People v. Cullum, 2013 IL App (1st) 111776-U,
620 The appellate court remanded Cullum's case to the trial court
621 "for a new sentencing hearing" because his concurrent sentences
622 were ruled void. id at 73-75, 86-87. On remand, the trial court (Noreen
623 Valeria-Love) did not afford Cullum a full new sentencing hearing, as
624 contemplated by statute and mandated by the appellate court at that time,
625 Instead, the trial court conducted a pro forma proceeding that de-
626 prived Cullum of his right to fully present new mitigation evidence
627 concerning his life, moral character and occupation during the time since
628 the original sentence was passed. 730 ILCS 5/5-3-3(2010). The court also
629 failed to comply with 730 ILCS 5/5-4-1(2010), which requires a court to comply
630 with and consider a multitude of factors.

631    Accordingly, Plaintiff asks this court to exercise its authority
632 under the constitution, to order that the trial court give him a
633 full and fair sentencing hearing, as he has exhausted his
634 remedies on the State level in an attempt to achieve this pur-
635 pose.

636   A court's compliance with statutory procedure is a question of law,
637 which is subject to de novo review. People v. Thomas, 383 Ill. App 3d
638 924, 929 (1st Dist. 2008). Likewise, a trial court's compliance with
639 the Appellate court's mandate is reviewed de novo. See People v. Stephens
640 2012 IL App (1st) 110296, 23, citing Puritans Financial Corp. v. Gumdrops
641 Inc., 101, Ill. App. 3d 888, 891 (1st Dist. 1981)(where a direct order with
642 instructions has been issued by this court, a trial judge has no
643 discretion in the matter and must follow the

28

644 Mandate"). Every criminal defendant has a constitutional and
645 statutory right to a full and fair sentencing hearing. U.S. Const.
646 amends. VI, XIV; Ill. Const. 1970, art. I ss 2; 730 ILCS 5/5-4-1
647 (2014); People v. Quintana, 332 Ill. App. 3d 96, 108 (1st Dist. 2002).
648 This right to a fair sentencing hearing includes the right to make
649 a statement on one's own behalf, the right to obtain a presentence
650 investigation report, the right to offer evidence in mitigation, and
651 the right to present and confront witnesses. See 730 ILCS 5/5-3-1;
652 730 ILCS 5/5-4-1. When a defendant's sentence is vacated on appeal, the
653 defendant is statutorily entitled to a new sentencing hearing on remand.
654 730 ILCS 5/5-5-3(d). The Code of Corrections provides:
655
656      In any case in which a sentence originally imposed is
657      vacated, the case shall be remanded to the trial court.
658      The trial court shall hold a hearing under section 5-4-1
659      of the Unified Code of Corrections which may include
660      evidence of the defendant's life, moral code and occupation
661      during the time since the original sentence was passed.
662      The trial court shall then impose sentence on the defendant.
663          730 ILCS 5/5-5-3(d) (2011).
664 Section 5-4-1 outlines the procedures that the trial court must
665 follow at the new sentencing hearing. The trial court shall:
666      (1) consider the evidence, if any, received upon the trial;
667      (2) consider any presentence reports.
668      (3) consider the financial impact of incarceration based upon
669      the financial impact statement filed with the clerk of the court
670      by the department of corrections;
671

29

672 (4) Consider evidence and information offered by the parties in
673　aggravation and mitigation;
674 (4.5) Consider substance abuse treatment, eligibility screening,
675　and an assessment, if any, of the defendant by an agent
676　designated by the State of Illinois to provide assessment
677　services for the Illinois Courts;
678 (5) hear arguments as to sentencing alternatives;
679 (6) afford the defendant the opportunity to make a statement in
680　his own behalf.
681 730 ILCS 5/5-4-1(a)(1)-(6)(2014)
682　The appellate court explained in the case of People v. Mitchell,
683 2014 IL App (1st) 120080:
684　Under the language of these statutory sections, once we
685　remanded the cause for resentencing, the trial court had
686　no choice but to hold a hearing to consider evidence from
687　trial, any presentence investigation reports, the financial
688　impact of incarceration, evidence in aggravation and
689　mitigation, the possibility of substance abuse treatment,
690　and sentencing alternatives. The court also was to have
691　afforded an opportunity to make a statement on his own
692　behalf and had the option of considering evidence of the
693　[defendants life], moral character, and occupation during
694　the time since the original sentence.
695 Mitchell, 2014 IL App (1st) 120080, 12.
696　The resentencing hearing contemplated by the appellate court
697 and required by statute did not happen in Mr. Collums case. The depriva-
698 tion was caused by the judge and attorneys' ignorance or
699 confusion about the statutory procedures they were supposed
30

700   to follow on remand. When the defendant does not receive an
701 adequate hearing, remand for a new and complete sentencing hearing
702 is required. People v. Sterling, 62 Ill. App. 3d 986, 990-91 (1st) Dist. 1978);
703 People v. Hammonds, 21 Ill. App. 3d 5, 7-8 (5th Dist. 1974).
704     The Judge's (Noreen Valeria-Love) confusion was evident
705 from the very beginning of the proceedings, when she said, "this
706 is not a resentencing" three times in a row. (EX2, B2) The judge
707 initially seemed to think she could just make the previously con-
708 current aggravated criminal sexual assault consecutive to the
709 other offenses, in order to comply with the appellate court's mandate
710 "They should run consecutive. So this is not a resentencing", the judge
711 said. (EX2, B2)
712     Defense counsel suggested that the court should lower the sen-
713 tences for both the aggravated criminal sexual assault and aggra-
714 vated kidnapping convictions from ten years to six years, as this
715 would be closests to the judges "initial intention". (EX2, B2)
716 Although defense counsel was absolutely correct - because counsel's
717 proposal would make the aggregate of the new consecutive senten-
718 ces the closest the judge could come to her originally imposed
719 10-year concurrent sentences, the judge impatiently responded,
720 "No, it's not, No, it's not". (R. B2 EX2)
721     Next, backtracking a bit from her initial rush to judgment,
723 the judge asked defense counsel what "additional mitigation"
724 Cullum wished to provide. Before defense counsel could say anything
725 more than that Cullum had "participated in a drug program and
726 schooling since he has been in IDOC," the prosecutor objected that
727 such evidence was improper. "[I]t should be the factors at the original
728 sentencing", the prosecutor said. (EX2, B3) Of course the prosecutor

31

729    was wrong, because section 5-5-3(d) gives the resentencing
730 court discretion to consider new evidence about a defendant's "life,
731 moral character and occupation" since the original sentencing hear-
732 ing. 730 ILCS 5/5-5-3(d).

733    The judge failed to exercise any discretion, as she immediately
734 decided that the prosecutor was correct about the law. She told defense
735 counsel that such evidence would have "no bearing on his sentencing
736 because ... this is post his conviction". Inexplicably, and ineffectively,
737 defense counsel responded, "That's fine, Judge". (EX 2, B3-4) When the
738 judge later asked whether Cullum wished to present "any additional
739 mitigation ... that was not considered in the first sentencing,"
740 counsel said, "No, Judge". (EX 2 B16)

741    The judge prosecutor, and defense counsel rushed Cullum through the re-
742 sentencing proceedings without holding the full-blown hearing that
743 the statute required. Although Cullum said that he was not ready for re-
744 sentencing, because he had "a myriad of issues" that he wished to raise,
745 and also alluded to "character witnesses" in mitigation that he had not
746 presented at the original sentencing, everyone disregarded Cullum's concerns
747 (R. B12, EX 2 17-18) Cullum was actually entitled to a continuance to pre-
748 pare with his attorney for a full new sentencing hearing, but he was de-
749 nied that right when the judge rushed him through the resentencing pro-
750 ceedings. See People v. La Rocco, 123 Ill. App. 2d 123, 127-28 (1st Dist. 1970)
751 (stating that any defendant is entitled "to a reasonable time to prepare for a
752 hearing in aggravation and mitigation," and trial court abused its discretion
753 in denying the defendant a continuance for preparation); People v. Leon, 82
754 Ill. App. 3d 344 (1st Dist. 1980).

755    Defense counsel remained silent when the judge asked whether
756 Cullum had mitigating evidence to present - evidently because the judge

32

757 earlier told counsel that evidence about Cullum's behavior since being
758 sent to prison would have "no bearing" for re-sentencing — but Cullum
759 briefly described to the judge some of the things he recently had been
760 doing to better himself while in prison. (EX 2 B 16-17) The prosecutor, though
761 objected to Cullum's remarks because they were "post conviction", and the
762 judge said, "This is post, yes." (EX2 B17) Although the judge gave Cullum
763 the opportunity to briefly speak about his recent steps toward rehabi-
764 litation, the judge never indicated that she would consider the in-
765 formation he provided in making her resentencing decision.
766 In fact, the judge had several times emphasized that such evidence
767 was "not relevant" and would not "make a difference". (EX.2, B 3-4)
768     However, Cullum had the right to present this evidence, and the
769 court should have considered it in fashioning the new sentences. 730 ILCS
770 5/5-5-3(d); People v. Daniels, 173 Ill. App. 3d 752, 756-57 (1st Dist. 1988)
771 (resentencing court should have considered the defendants prison conduct);
772 Pepper v. United States, 131 S.Ct. 1299, 1249 (2010) (requiring, in federal re-
773 sentencing hearings, that the trial judge consider defendant's post-sen-
774 tencing rehabilitation). When mitigating evidence is before the court, it is
775 presumed that the judge considered the evidence, unless there is "some
776 indication other than the sentence itself to the contrary." People v. Saw-
777 yer, 139 Ill. App. 3d 383, 387 (3d Dist. 1985). In this case the presumption is
778 that the judge did not consider anything Cullum told the court as miti-
780 gating, as the judge stated several times at the proceedings that such
781 evidence was not relevant to resentencing. (EX 2 B 3-4, 17) This fact
782 alone should be enough to warrant a new sentencing hearing. The judge
783 also could have ordered a new presentence investigation report, and
784 Cullum could have called new character witnesses, which could have
785 given a more complete picture of his "life, moral character and·

33

786 occupation" since his incarceration, but nobody bothered to even in-
787 form Cullum of that opportunity. See Mitchell, 2014 IL App (1st) 120080, at
788 11-12; 730 ILCS 5/5-4-1 (2014).

789    The court failed on remand to hold the new sentencing hearing
790 required before imposing its sentence. Instead of reconsidering
791 the appropriateness of Cullum's sentences, articulating any of the rea-
792 sons for the sentences on the record, or following any of the require-
793 ments of section 5-4-1, the judge simply announced that she was
794 resentencing Cullum to ten years on the aggravated criminal sexual
795 assault conviction, resentencing him to six years on the aggravated
796 kidnapping conviction, merging various counts, and imposing the origi-
797 nal sentences on various counts of the lesser charges. (B18-21 Ex2)
798 The court's subsequent hearing on the motion to reconsider sentence
799 was similarly cursory, and showed the judges refusal to seriously con-
800 sider the appropriateness of her resentencing decisions. (Ex2, C 2-3);
801 People v. Horton, 250 Ill. App. 3d 944, 953-54 (4th Dist. 1993)(finding error when
802 the trial judge "offhandedly" dismissed the defendant's request for re-
803 consideration of the sentence); People v. Jackson, 239 Ill. App. 3d 165, 167-
804 68 (4th Dist. 1992) noting that the trial court has a duty to actually consi-
805 der a motion to reconsider sentence).

806    ~~Dedeck~~ Cullum In this case, the trial court caused the denial of a
807 fair sentencing hearing when she; 1) rushed the proceedings along with-
808 out offering Cullum and his attorney a continuance to prepare for the
809 hearing at which they would present mitigation evidence; 2) refused
810 to find that any new mitigation evidence Cullum might present would have
811 any relevance to her resentencing decision; and 3) failed to consider
812 any of the factors required by section 5-4-1 before sentencing Cullum.
813 Furthermore, the judge was unwilling to consider that six-year

34

814 consecutive sentences would come closest to her "initial intention",
815 or to consider Cullum's new-found remorse about the incident.
816 The judge did not give any reason for her resentencing decision
817 or refer to any of the evidence provided at the original sentencing
818 hearing, but Cullum was a young man who had never before been to
819 prison, and the evidence favored a lesser sentence. See People v. Mar-
820 tin, 119 Ill. 2d 453, 458 (1998) ("The evidence presented at the sentencing
821 hearing was not simply closely balanced, it strongly favored leniency for
822 the defendant".)

823 B.)                          Argument

824 #2.  Increasing Plaintiff's aggregate sentence by six years
825 on remand was the result of vindictiveness, because that much
826 of an increase was unnecessary for compliance with the
827 appellate court's order, and because the judge told Plaintiff
828 that his aggregate sentence increased by six years simply because
829 he appealed. Therefore, the appellate court's lack of jurisdiction in
830 remanding the Plaintiff's case to the trial court for imposition of
831 consecutive sentences is what led to the vindictive sentences, i.e.,
832 the increase in punishment.

833        The trial court originally sentenced Detrick Cullum to an
834 aggregate term of 10 years, based on concurrent 10-year sen-
835 tences for aggravated criminal sexual assault and aggravated
836 kidnapping, along with various other lesser concurrent sentences.
837 (C.111-112). The appellate court, Pierce, Harris, and Simon, remanded
838 for resentencing as they believed the trial court erred by making
839 the aggravated criminal sexual assault conviction concurrent with
840 the other sentences.
841

842   At the resentencing hearing, defense counsel asked the judge
843 to impose "six plus six" consecutive" sentences for the aggravated
844 criminal sexual assault and aggravated kidnapping convictions, as
845 such sentences would be closest to the judge's "initial intention"
846 to sentence Cullum to serve 10 years in prison. Even though trial
847 counsel was absolutely correct, the judge, Noreen Valeria-Love,
848 inexplicably, and unreasonably, responded to counsel's suggestion
849 by saying, "No, it's not. No, it's not." (EX 2, B2) Rather than reducing
850 both the aggravated kidnapping and aggravated criminal sexual
851 assault sentences to the minimum Class X sentences of six
852 years, which would leave Cullum with an aggregate term of
853 twelve years, to be served at 85 percent, which would be the
854 the closest she could get without to the initial sentences, and
855 in agreement with the "spirit of the law" and fundamental
856 fairness, the trial court increased the original aggregate ten-
857 year term by six years - to an aggregate of sixteen years,
858 to be served at 85 percent. (EX2, B18-21) The judge offered no
859 explanation as to why Cullum deserved such a drastic increase
860 in his aggregate sentence. When Cullum later asked the judge why
861 she had increased the total sentence by six years, the judge
862 responded, "You haven't done anything except you appealed it
863 to the Appellate Court, and the Appellate Court mandated that I
864 give you a consecutive sentence. You did nothing". (EX2, B34-35)
865 Under Illinois law, the trial court must have given due consi-
866 deration to the seriousness of the offense and to the goal of
867 restoring the offender to useful citizenship. Ill. Const. 1970, art.
868 I, sec. 11; People v. Steffens, 131 Ill. App. 3d 141, 151, (1985
869

870     In this case, the six years the judge added to Cullum's
871 aggregate sentence on remand, after hearing nothing but
872 good information about his conduct since the original sentence;
873 was vindictive and arbitrary. The judge offered no reason why
874 she would not reconfigure Cullum's consecutive sentence for aggravated
875 criminal sexual assault to make the aggregate of the new sen-
876 tences conform more closely to her initial sentencing intention.
877     In fact, the judge's explanation to Cullum that she was increas-
878 ing the overall length of his sentence simply because he had
879 "appealed to the Appellate Court" shows that the judge was being
880 vindictive and punishing Cullum for exercising his right to appeal.
881 Vindictiveness was also demonstrated by the judge (Noreen Valeria-
882 Love) when she chastised Cullum for accepting responsibility of
883 his actions and showing remorse. It went as follows:
884
885 Judge: Is there anything else that you wish to say, Mr. Cullum,
886 that you failed to indicate to me in the first sentencing hearing?
887 Cullum: I just wish to -- I will try to give mitigation of what - how
888 I have been occupying my time.
889     I have been in substance abuse programs. I have been
890 maintaining a B average at school. I have the transcript right here
891 with the college. I have been creating inventions, your honor,
892 that I think are very good, and I have elaborate business ventures,
893 your honor. I have been studying law.
894     I am trying to get some kind of way for myself. Over that
895 time, I also had time to reflect upon my actions within this sit-
896 uation, your honor, and I wish to -- I wish that young lady
897 was here so that I could formally apologize to her for my

37

898 conduct of that evening, your honor, because I have learned
899 during the drug treatment program to be empathetic toward another.
900    And I remember specifically you telling me during the last time
901 it's always someone elses fault, and that's been playing in my
902 head a lot, and I have to look at me and see what were my actions
903 in those situations, your honor.
904    And I have seen like -- I mean I brought a lot of things upon
905 myself, you know, and I told myself time and time again I am
906 not actually mad that I was incarcerated, but I was just upset
907 that it took me to become incarcerated to have this mindset that I
908 have now to make me want to be a better me.
909    I have been practicing learning French, I have been practicing
910 learning --
911 Prosecutor: Judge, I will object to all of this as this is post.
912 Judge: This is post, yes. Okay anything else Mr. Cullum.
913 Cullum: I wish that I could have brought in character witnesses
914 for you, Ma'am. I think that's a very important thing in mitiga-
915 tion.
916 Prosecutor: Judge, his mother did testify the last time.
917 Judge: She did. I recall that she did.
918       Here is the thing about it. You know you say now that
919 you kind of have come to terms with these things; and you
920 are not mad that you were incarcerated. And again, it's kind of
921 like that I am not sorry that I did what I did, I am just
922 sorry that I got to go to jail for it. That's the kind of
923 attitude.
924 Cullum: Not at all, Ma'am.
925 Judge: So, you know, maybe some lessons will be learned.

38

926   The judge then goes on to vindictively sentence Cullum. The
927   Comment "Maybe some lessons will be learned," & by the judge,
928   demonstrates that she was internally thinking of arbitrary
929   Factors outside of his expressions of acceptance and re-
930   morse. (Ex 2, B18-19) The judges response showed that she either
931   had not been listening to anything Cullum had just said, or that she
932   did not care about his apology to the victim because nothing he
933   said at these proceedings would have any impact on her re-sen-
934   tencing decision. Right after the judge interprets his apology and
935   acceptance as an "attitude," she increased his aggregate sentence
936   by six years at 85%.
937      When a sentence has been set aside on appeal, the trial
938   court is generally barred by statute and by considerations of
939   due process from imposing a sentence for the same conduct
940   that is more severe than the original sentence unless the more
941   severe sentence is based on the defendants conduct occurring
942   after the original sentencing. North Carolina v. Pearce, 395 U.S.
943   711, 723-24 (1969); People v. Kirkpatrick, 167 Ill. 2d 439, 446-47
944   (1995); 730 ILCS 5/5-5-4(a)(2014). Without this rule, a defendant
945   would fear the trial court could penalize him for exercising
946   his right to challenge his conviction and sentence. In Pearce,
947   the United States Supreme Court stated that "fear of... Vindictive-
948   ness" may deter a defendant from exercising his right to appeal.
949   Therefore, "due process ... requires that a defendant be freed of
950   apprehension of such a retaliatory motivation on the part of
951   the sentencing judge." 395 U.S. at 725.
952
953

# Conclusion

954    The judge in Cullum's case expressly told him that he had
955 done nothing to deserve the increased aggregate sentence
956 except exercise his right to appeal. Lowering the aggravated
957 Criminal sexual Assault sentence to six years, to be served
958 consecutively to the six-year sentence for aggravated Kidnapping,
959 would have complied with the appellate court's mandate and
960 been the closest to the judge's original sentencing determination.
961 With no explanation on the record for the new sentence other
962 than Cullum appealed, this court should find that the trial
963 Court's actions are attributable to the appellate court, who
964 remanded the cause back to the trial court at the State's
965 behest, thereby, acting outside of its jurisdiction. This makes
966 Cullum's sentences void under the law, as a court without
967 jurisdiction ordered them. The trial court expressly stated:
968 "You haven't done anything except you appealed it to the Appellate
969 Court, and the Appellate Court mandated that I give you a consecu-
970 tive sentence. (EX 2, B35)

971    Cullum himself had done nothing except appeal his conviction,
972 which is his right under the Illinois Constitution. Ill. Const.
973 1970, art. VI ss 6; Jones v. Barnes, 463 U.S. 747, 751 1983.
974 Afterall, the alleged sentencing error was not Cullum's fault, but
975 he was bearing the brunt of the alleged error. The State or
976 the appellate court never considered that maybe the merger
977 of the aggravated kidnapping and aggravated criminal sexual assault
978 were legal under by the trial court were legal under the inclu-
979 ded offense statute, and the lesser included offense statute,
980 of Illinois law.
981

782      Included Offense : Means an offense which (A) is established
783 by proof of the same or less than all of the facts, or a less
784 culpable mental (or both) than that which is required to establish
785 the offense charged or (B) consist of an attempt to commit the
786 offense charged or an offense included therein. 720 ILCS 5/2-9
787      A "Lesser - Included offense is one which includes all elements
788 of a greater offense so that it would be impossible to commit the
789 greater offense without committing the lesser offense. People
790 v. Brown, 171 Ill. App. 3d 391 (2d Dist. 1988)
791      Here, the State alleged in its indictment that Cullum committed
792 an act of aggravated criminal sexual assault by the use of force
793 or threat of force. The threat of force in the case was the
794 aggravated kidnapping, or the use of confinement. As the State
795 presented its case at trial, it would have been impossible to
796 commit the "greater offense" of aggravated criminal sexual
797 assault with out committing the lesser offense of kidnapping, therefore,
798 under the law the charges / convictions / sentences, could merge, as
799 defense counsel argued and the court agreed. (R. 010) (R. 023)
1000      The bottom line is the appellate court and the State reinter-
1001 preted the facts of Cullum's case how they saw fit without any regard
1002 for the trial courts ruling or reasoning behind Cullum's concurrent
1003 sentences. They instead usurped the jurisdiction of the trial
1004 court and without authority under Illinois law, remanded Cullum's
1005 case to the trial court for the imposition of consecutive senten-
1006 cing which resulted in more punishment for Cullum through a
1007 vindictive sentence, simply for exercising his right to
1008 appeal his conviction under Illinois law.
1009

1010    Where original conviction has been set aside because of
1011 constitutional error, any imposition of heavier sentence to penalize
1012 convicted person who chooses to exercise constitutional rights
1013 would be unconstitutional under due process clause of Fourteenth
1014 Amendment. North Carolina v. Pearce, 89 S.Ct. 2072 (1969)

1015    If First conviction has been set aside for nonconstitutional error,
1016 imposition of penalty upon defendant for having successfully
1017 pursued statutory right of appeal or collateral remedy would deny
1018 due process. North Carolina v. Pearce, 89 s.ct 2072 (1969)

1019    Therefore, Plaintiff requests that this Honorable court
1020 exercise its supervisory authority, and its jurisdiction over
1021 his constitutional rights to order the appellate Escourt
1022 Justices Pierce, Harris, and Simon or the Circuit Court judge
1023 Geary W. Kull, as Noreen Valerion=Love is retired, to apply
1024 people v. Castleberry to his case as it is required under
1025 the due process and equal protection clauses, and because
1026 the appellate court's actions led to vindictive sentencing
1027 in violation of his constitutional rights, in addition to
1028 whatever other relief this Court deems necessary.

1029    I therefore leave this Honorable Court with this observation
1030 of Justice Harland:

1031    "If we do not resolve all cases before us on direct review in
1032 light of our best understanding of governing constitutional principles
1033 it is difficult to see why we should so adjudicate any case at
1034 all... In truth, the Court's assertion of power to disregard current
1035 law in adjudicating cases before us that have not already run the full
1036 course of appellate review, is quite simply an assertion that our
1037 constitutional function is not one of adjudication but in effect

42

1039 legislation". Mackey v. United States, 401 U.S., at 679, 91 S.

1040      "173.

1041 pending on direct with not applying new rules to cases

1042 results when the Court "is 'the actual inequity' that

1043 situated defendants should be the "chance beneficiary' of a

1044 new rule"; United States v. Johnson, 457 U.S., at 556, n.16, 102

1045 S.Ct., at 2590, n.16.

1046 "Although the Court had tolerated this inequity for a time

1047 by not applying new rules retroactively to cases on direct

1048 review, We noted: "The time for toleration has come to an end".

1049 Ibid.

## Relief Requested

That this Honorable Court use it's authority to issue a
supervisory order to admonish the appellate court or the
trial court to reconsider Plaintiff's case in light of Castleberry
and/or issue Declatory relief or Injunctive relief by compel-
ling the said court's to follow the appropriate procedures
under described herein to grant him relief under Castleberry
as Harris, Pierce, and Simon acted without jurisdiction
~~to form and Thein~~ in remanding Plaintiff case to the trial court
for imposition of consecutive sentences, which led to vindictive
sentencing, Plaintiff also requests that this Honorable court
grant whatever other relief it deems necessary, and the
Defendants' actions led to Several violations.   Respectfully,

~~and~~ Subscribed before me this                            Patrick Cullum
Dereen D. Richardson

DINEEN L. RICHARDSON
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires Jul 05, 2026

                                                    August 29, 2019

43

EX/



# SUPREME COURT OF ILLINOIS
SUPREME COURT BUILDING
200 East Capitol Avenue
SPRINGFIELD, ILLINOIS 62701-1721
(217) 782-2035

Detrick Cullum
Reg. No. M-22036
Illinois River Correctional Center
P.O. Box 999
Canton IL 61520

FIRST DISTRICT OFFICE
160 North LaSalle Street, 20th Floor
Chicago, IL 60601-3103
(312) 793-1332
TDD: (312) 793-6185

January 31, 2019

In re:  People State of Illinois, respondent, v. Detrick Cullum, petitioner.
Leave to appeal, Appellate Court, First District.
124233

The Supreme Court today DENIED the Petition for Leave to Appeal in the above
entitled cause.

The mandate of this Court will issue to the Appellate Court on 03/07/2019.

Very truly yours,

Carolyn Taft Grosboll

Clerk of the Supreme Court

Ex]



# SUPREME COURT OF ILLINOIS
SUPREME COURT BUILDING
200 East Capitol Avenue
SPRINGFIELD, ILLINOIS 62701-1721

CAROLYN TAFT GROSBOLL
Clerk of the Court

(217) 782-2035
TDD: (217) 524-8132

May 30, 2018

FIRST DISTRICT OFFICE
160 North LaSalle Street, 20th Floor
Chicago, IL 60601-3103
(312) 793-1332
TDD: (312) 793-6185

Detrick Cullum
Reg. No. M-22036
Illinois River Correctional Center
P.O. Box 999
Canton, IL 61520

THE COURT HAS TODAY ENTERED THE FOLLOWING ORDER IN THE CASE OF:

M.D.014097 - Cullum v. Kull

The motion by petitioner for leave to file a petition for an original writ of mandamus is denied.

Very truly yours,

Carolyn Taft Grosboll

Clerk of the Supreme Court

cc: Attorney General of Illinois - Criminal Division

1    THE COURT:  All right.  Detrick Cullum.

2            This is not a resentencing.  The sentencing

3    stands.  The only issue here is what merges into what.

4    This is not a resentencing.

5    MS. BAILEY:  And I think that two of the counts

6    should run consecutive.

7    THE COURT:  Yes, they should run consecutive.  So

8    this is not a resentencing.

9    MS. BRAUCKMAN:  Judge, the way that I read it is

10    because they are saying that the original sentences were

11    void, that --

12    THE COURT:  Okay.  I don't have it.  I don't have

13    the file.

14    MS. BRAUCKMAN:  I think that because the sentences

15    were entered concurrently and that was illegal under the

16    law, that the sentences are completely void so they are

17    remanding it for a resentencing hearing.

18    MS. BAILEY:  It says sentences void, yes.

19    MS. BRAUCKMAN:  Judge, it would certainly be my

20    position if you initially intended to give him what

21    would essentially be a ten year sentence and now you are

22    being ordered to do something consecutive, the closest

23    you can come now to what your initial intention was is

24    to consider six plus six consecutive.

Ex. 1



# SUPREME COURT OF ILLINOIS
SUPREME COURT BUILDING
200 East Capitol Avenue
SPRINGFIELD, ILLINOIS 62701-1721

CAROLYN TAFT GROSBOLL
Clerk of the Court
(217) 782-2035
TDD: (217) 524-8132

October 18, 2017

FIRST DISTRICT OFFICE
160 North LaSalle Street, 20th Floor
Chicago, IL 60601-3103
(312) 793-1332
TDD: (312) 793-6185

Detrick Cullum
Reg. No. M-22036
Hill Correctional Center
P. O. Box 1700
Galesburg, IL 61402

In re:    People v. Cullum
          121410

Today the following order was entered in the captioned case:

> Motion by Petitioner, pro se, for leave to file a motion for reconsideration of
> the order denying petition for leave to appeal. Denied.

> Order entered by the Court.

Very truly yours,

*Carolyn Taft Grosboll*

Clerk of the Supreme Court

cc:    Attorney General of Illinois - Criminal Division
       Cook County State's Attorney, Criminal Division

Ex.1



# SUPREME COURT OF ILLINOIS
SUPREME COURT BUILDING
200 East Capitol Avenue
SPRINGFIELD, ILLINOIS 62701-1721

CAROLYN TAFT GROSBOLL
Clerk of the Court

(217) 782-2035
TDD: (217) 524-8132

November 27, 2018

FIRST DISTRICT OFFICE
160 North LaSalle Street, 20th Floor
Chicago, IL 60601-3103
(312) 793-1332
TDD: (312) 793-6185

Detrick Cullum
Reg. No. M-22036
Illinois River Correctional Center
P.O. Box 999
Canton, IL 61520

THE COURT HAS TODAY ENTERED THE FOLLOWING ORDER IN THE CASE OF:

M.D.014198 - Cullum v. Pierce

The motion by movant for a supervisory order is denied.

Very truly yours,

*Carolyn Taft Grosboll*

Clerk of the Supreme Court

cc: Attorney General of Illinois - Criminal Division

```
 1          THE COURT:  No, it's not.  No, it's not.

 2          MS. BRAUCKMAN:  I would certainly be wanting to

 3  make that argument.  Mr. Cullum also --

 4          THE COURT:  You can make that argument.  That was

 5  not actually -- what you are saying is not really

 6  accurate, but I don't have the file because they don't

 7  know where the file is.  I don't have anything on this

 8  case.

 9              Okay.  So with respect to the sentencing,

10  that's fine.  What's the additional mitigation he wants

11  to provide?

12          MS. BRAUCKMAN:  Judge, I know that he was -- he has

13  participated in a drug program and schooling since he

14  has been in IDOC.

15          MS. BAILEY:  The State would object because it

16  should be the factors at the original sentencing.

17          THE COURT:  Absolutely.  That has no bearing on his

18  sentencing because that was -- this is post his

19  conviction.

20              That's fine.  Bring him out.  I am going to

21  make him aware that's not going to make a difference.

22          MS. BRAUCKMAN:  That's fine, Judge.

23          THE COURT:  Okay.  Ms. Brauckman.

24          MS. BRAUCKMAN:  Yes, Judge.  Heather Brauckman,
```

1    Assistant Public Defender on behalf of Detrick Cullum
2    who is here on a mandate from the Appellate Court for a
3    new sentencing hearing.
4                 Judge, we are requesting a date for that
5    hearing.
6         THE COURT:   Why is it not ready today?
7         MS. BRAUCKMAN:   Judge, a couple of things.   One is
8    I did speak with Mr. Cullum who would like to present to
9    the Court at this sentencing hearing with mitigation
10   since the time that he has been in the Department of
11   Corrections.
12        THE COURT:   It's not relevant.
13        MS. BRAUCKMAN:   Judge, he has also indicated to me
14   that he has got issues that he would like to bring
15   before the Court to make them part of the record.
16        THE COURT:   What issues would those be?
17        MS. BRAUCKMAN:   I know that he has given me some
18   indication.   He has also indicated there is more that he
19   needs to --
20        THE COURT:   What issues?
21        MS. BRAUCKMAN:   -- organize and compile.
22        THE COURT:   What issues are you referring to,
23   Mr. Cullum?
24        MS. BRAUCKMAN:   One of them sounds to me like an

1  a higher court.

2          THE DEFENDANT:  The other thing that I had is I

3  don't know what a stay is articulated as per say.

4          THE COURT:  A what?

5          THE DEFENDANT:  A stay.

6          THE COURT:  Okay.

7          THE DEFENDANT:  I wish -- I haven't seen my little

8  brothers in four years.  I wish to have some time.

9          THE COURT:  You are talking about mandating you to

10  the Cook County Department of Corrections, and that I

11  cannot do.

12          THE DEFENDANT:  No, not to the Cook County

13  Department of Corrections, but grant me a stay at

14  Stateville.

15          THE COURT:  I cannot.  Let me say this again.  I

16  have no jurisdiction over the Illinois Department of

17  Corrections.  They will ship you wherever they are going

18  to ship you whenever they are going to ship you.    That

19  is outside of my jurisdiction.

20              So I am going to ask you other than the

21  things that he has indicated which have been

22  post-sentencing, any additional mitigation that you wish

23  me to consider that was not considered in the first

24  sentencing?

1      MS. BRAUCKMAN: No, Judge.

2      THE COURT: State, anything in aggravation that was
3  not considered?

4      MS. BAILEY: No, your honor. The State presented
5  all the aggravation previously.

6      THE COURT: Is there anything else that you wish to
7  say, Mr. Cullum, that you failed to indicate to me in
8  the first sentencing hearing?

9      THE DEFENDANT: Yes, ma'am.

10      THE COURT: Okay.

11      THE DEFENDANT: I just wish to, um, to give -- I
12  mean I will try to give mitigation of what -- how I have
13  been occupying my time.

14           I have been in substance abuse programs. I
15  have been maintaining a B average at school. I have the
16  transcript right here with college. I have been
17  creating inventions, your honor, that I think are very
18  good, and I have elaborate business ventures, your
19  honor. I have been studying the law.

20           I am trying to get some kind of way for
21  myself. I also wish -- over that time, I also had time
22  to reflect upon my actions within this situation, your
23  honor, and I wish to -- I wish that young lady was here
24  so that I could formally apologize to her for my conduct

1  of that evening, your honor, because I have learned
2  during the drug treatment program to be empathetic
3  toward another.
4          And I remember specifically you telling me
5  during the last time it's always someone else's fault,
6  and that's been playing in my head a lot, and I have to
7  look at me and see what were my actions in those
8  situations, your honor.
9          And I have seen like -- I mean I brought a
10 lot of things upon myself, you know, and I told myself
11 time and time again I am not actually mad that I was
12 incarcerated, but I was just upset that it took me to
13 become incarcerated to have this mindset that I have now
14 to make me want to be a better me.
15          I have been practicing learning French.  I
16 have been practicing learning --
17      MS. BAILEY:  Judge, I will object to all of this as
18 this is post --
19      THE COURT:  This is post, yes.
20          Okay.  Anything else, Mr. Cullum?
21      THE DEFENDANT:  I wish that I could have brought in
22 character witnesses for you, ma'am.  I think that's a
23 very important thing in mitigation, my character
24 witnesses that I had wanted to bring in last time, but

1 for some reason I couldn't.

2     MS. BAILEY: Judge, his mother did testify the last

3 time.

4     THE COURT: She did. I recall that she did.

5     MS. BAILEY: And his dad.

6     THE COURT: You know sometimes -- and I appreciate

7 that. Sometimes parents are not the best character

8 witnesses because often parents are in denial about what

9 their children do or are capable of doing because no

10 parents want to really admit, well, my kid did this or

11 did that.

12     Here is the thing about it. You know you say

13 now that you kind of have come to terms with these

14 things, and you are not mad that you were incarcerated.

15 And again, it's kind of like that I am not sorry that I

16 did what I did, I am just sorry that I got to go to jail

17 for it. That's the kind of attitude.

18     THE DEFENDANT: Not at all, ma'am.

19     THE COURT: So, you know, maybe some lessons will

20 be learned. I don't know if they will or not, but the

21 original sentence as to Count 1 was ten years Illinois

22 Department of Corrections.

23     The sentencing will remain at ten years in

24 the Illinois Department of Corrections, and that, sir,

```
 1  will carry with it three years of mandatory supervisory
 2  release period.
 3           Counts 2 and 3 will merge into Count 1.  As
 4  to Count 4, it will be six years in the Illinois
 5  Department of Corrections.  That is to run consecutive
 6  to the 10 years.
 7           The agg kidnapping, is that 85 percent?
 8  Anybody have a cheat sheet real quick?  I am thinking it
 9  might be 85 percent.
10      MS. BRAUCKMAN:   Judge.
11      THE DEFENDANT:  Ma'am.
12      MS. BRAUCKMAN:  Yes, Judge.  It is.  It's an
13  automatic 85 percent.
14      THE COURT:  It's an automatic 85 percent.  That
15  will be consecutive to Count 1, and it will be at 85
16  percent.
17           And Counts 5, 6, and 7 will merge into Count
18  4.
19           Now as to the PSMV, which is Count 8, I --
20      MS. BAILEY:  No, that's the aggravated PSMV.  That
21  is Count 8, your honor.
22      THE COURT:  Okay.  The aggravated PSMV, Count 8,
23  that sentence will remain the same.
24           I believe I gave him --
```

```
1        MS. BRAUCKMAN:  Five.

2        MS. BAILEY:  Five years.

3        THE COURT:  Five years Illinois Department of
4   Corrections to run concurrent with Counts 1 and 4.

5              And then there is the PSMV which will merge
6   into Count 8.  That was Count 9.

7              Then the aggravated battery in a public
8   place, that also remains on its own, and I think I gave
9   him three.

10       MS. BRAUCKMAN:  Three, yes.

11       THE COURT:  Three years IDOC.

12       MS. BRAUCKMAN:  Yes.

13       THE COURT:  To also run concurrent with the other
14  counts.

15             And then Count 4 which was I think two years
16  IDOC.  That will also run concurrent to the other
17  counts.

18             There were a ton of misdemeanors I have here
19  which I believe I sentenced him to as well.  Let me see
20  what those are.

21             Actually, I gave him time served on I think
22  everything.

23       MS. BAILEY:  I think you might have on the
24  misdemeanors, your honor.
```

```
 1          THE COURT:  Yes.

 2          MS. BAILEY:  I don't see a separate sentence.

 3          THE COURT:  Yes, so there was no separate sentence

 4  on that.  It was just the time that he had in custody.

 5          MS. BAILEY:  I am sorry, Judge.  We would indicate

 6  for the record that Count 1 is 85 percent also.

 7          THE COURT:  Yes, Count 1 is also at 85 percent.

 8  That's statutorily set.

 9              Now I want to make sure that he has all of

10  his credit.  He has been in IDOC now for how long?

11          MS. BRAUCKMAN:  Judge, I believe it's 1,526 days.

12          THE COURT:  And is that not including the time he

13  was in custody awaiting trial?

14          MS. BRAUCKMAN:  It is including that.

15          THE COURT:  Okay.

16          MS. BRAUCKMAN:  It is supposed to include that.

17          THE COURT:  I am sorry.  The number again.

18          MS. BRAUCKMAN:  It's 1,526 days.

19          THE COURT:  Okay.  1,526 days that you will receive

20  credit for.

21              Again, the MSR period as to Count 1 is three

22  years.  The MSR period as to Count 2 is also three

23  years.

24              Sir, as to Count 8, the MSR period is two
```

```
1   years; as to Count 9, the MSR period is one year; and as
2   to Count 11, the MSR period is one year.
3              Okay.  That is the order.  We will send down
4   a new mitt.
5        THE DEFENDANT:  Ms.
6        THE COURT:  Yes, sir.
7        THE DEFENDANT:  Is it a issue that --
8        THE COURT:  I think he wants to file that motion as
9   well.
10       MS. BRAUCKMAN:  Okay.
11       THE DEFENDANT:  Yes, is it an issue that the day
12  that we were supposed to have had a trial that I asked
13  for a jury instead of a bench?
14             I asked for a jury instead of a bench, but
15  Ms. B., Ms. Brauckman, she asked me what do you want, a
16  jury or a bench, and I said a jury.  She said I think
17  that a jury is going to find you guilty, give you more
18  time.
19       THE COURT:  Okay.
20       THE DEFENDANT:  I assumed we were done.
21             And she said I know this judge, she is fair
22  and based on the evidence, she won't find you guilty.
23  You should trust me on this.
24             I told her, well, I think I should go with a
```

1    resentence now, I am not going to bring you back to do

2    that. You can still file it with the clerk by way of

3    mail as long as you do it within thirty days.

4        THE COURT: Okay.

5        THE DEFENDANT: I will file it right now.

6        THE COURT: You can file it right now. How many

7    copies do you have?

8        THE DEFENDANT: I just have one copy.

9        THE COURT: I will accept it. That will be the

10    original for the court.

11            Right now I can't get you a copy.

12        MS. BRAUCKMAN: I will be happy to make copies,

13    Judge.

14        THE DEFENDANT: Can I utilize a pen.

15        MS. BRAUCKMAN: If the sheriffs will allow you to,

16    you can use a pen.

17        THE COURT: Okay.

18        THE DEFENDANT: Ma'am.

19        THE COURT: Sir.

20        THE DEFENDANT: May I also ask one more question.

21        THE COURT: Yes, sir.

22        THE DEFENDANT: Why such a -- I mean what have I

23    done since you are imposing ten years concurrent to

24    making me deserve 16 years, Judge?

*1   THE COURT: You haven't done anything except you

2 appealed it to the Appellate Court, and the Appellate

3 Court mandated that I give you a consecutive sentence.

4 You did nothing.

5    The Appellate Court said, Judge, you made a

6 mistake. He should have been sentenced to a consecutive

7 sentence so I did what the Appellate Court told me what

*8 I had to do.

9   THE DEFENDANT: Yeah, but you obviously then -- you

10 obviously found certain evidence in mitigation and

11 aggravation.

12   THE COURT: Sir.

13   THE DEFENDANT: In which to rule --

14   THE COURT: First of all, understand something. I

15 don't make the sentencing laws. The People in

16 Springfield do that.

17    The Appellate Court said, Judge Love, I

18 appreciate that you gave this guy concurrent sentences,

19 but you were wrong. You were supposed to give him

20 consecutive sentences.

21    Now I have to give consecutive sentences. I

22 did so because the Appellate Court said I had to do

23 that. Okay.

24   MS. BAILEY: Judge, I understand while this

NOTICE,
The text of this order may
be changed or corrected
prior to the time for filing of
a Petition for Rehearing or
the disposition of the same.

EX, 3

2016 IL App (1st) 141546-U

FIRST DIVISION
September 12, 2016
Modified upon denial of rehearing

No. 14-1546

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Respondent-Appellee, | ) | |
| | ) | |
| v. | ) | 10 CR 04692 |
| | ) | |
| DETRICK CULLUM, | ) | |
| | ) | Honorable Noreen Valeria-Love |
| Petitioner-Appellant. | ) | Judge Presiding. |

JUSTICE SIMON delivered the judgment of the court.
Presiding Justice Pierce and Justice Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court did not abuse its discretion when it resentenced defendant to the same sentences to run consecutively following the vacatur of the concurrent sentences based on determination that consecutive sentences were mandatory. Defendant's sentences imposed on remand were not excessive.

¶ 2     After a bench trial, defendant Detrick Cullum was convicted and sentenced to concurrent terms of 10 years for 3 counts of aggravated criminal sexual assault, 6 years for 2 counts of aggravated kidnapping, 10 years for 2 counts of kidnapping, 5 years for aggravated possession of a stolen motor vehicle, 4 years for possession of a stolen motor vehicle, 3 years for aggravated

A-9

battery on a public way, and 2 years for aggravated fleeing or attempting to elude a police officer. Following defendant's direct appeal, we remanded the case to the trial court for a resentencing. *People v. Cullum*, 2013 IL App (1st) 111776-U, ¶ 75. Defendant appeals from the resentencing. For the following reasons we affirm.

¶ 3                                    BACKGROUND

¶ 4    The factual background underlying defendant's convictions was recounted in our previous decision on direct appeal. *People v. Cullum*, 2013 IL App (1st) 111776-U. We recite only the facts pertinent to the current appeal.

¶ 5    In relevant part, at trial, the State's evidence showed that defendant stole his girlfriend's rental car which she had rented after defendant crashed her actual car while he was supposedly waiting for her at a doctor's office. Defendant met the victim A.B. at a party later that day and, although she agreed to go with him to a gas station, he started driving to other places. He picked up his friend Michael Dorsey and stopped to purchase cigars, and then all three of them went to an abandoned apartment building where defendant indicated that they could get marijuana. A.B. told defendant that she would not have sex with him; defendant insisted on performing oral sex on A.B. She maintained that she would not have intercourse with him. After leaving the building defendant drove Dorsey home. Dorsey asked A.B. if she was ok, but when A.B. tried to get out of the car, defendant sped off.

¶ 6    Defendant drove around erratically and refused A.B.'s repeated requests to let her out of the car or to take her home. He punched her, discarded her phone, side swiped another car and forced her to perform oral sex upon him. A.B. managed to escape but defendant dragged her back in the car.

¶ 7    Eyewitness Adam Silva saw defendant and A.B. fighting and called the police. When the

police arrived, defendant crashed the car in an attempt to hit the police car, and then fled from the scene. Defendant was ultimately apprehended by police on the top of a nearby condominium building.

¶ 8    A.B. identified the photographs showing the injuries she suffered in the altercation with defendant including bruising and scratches on her hands, neck, elbow, wrist, leg, and lower back. A.B. testified that the injuries resulted from defendant hitting her, dragging her toward the vehicle and punching and scratching her to get her back into the vehicle. A.B. also testified that the pictures depicting scratches on defendant's face and neck indicated her efforts to fight off and get away from defendant.

¶ 9    Defendant testified on his behalf contending that he recalled A.B. telling him that she agreed to perform oral sex on him and that she did perform oral sex when defendant pulled over.

¶ 10    At the conclusion of the evidence, the trial court found defendant guilty of all counts. Defendant filed a direct appeal where he argued that: (1) the State failed to prove him guilty of aggravated criminal sexual assault, aggravated kidnapping, kidnapping, aggravated possession of a stolen motor vehicle, possession of a stolen motor vehicle, and aggravated fleeing and eluding beyond a reasonable doubt; (2) the trial court failed to merge various counts and the mittimus must be corrected to comply with the one act-one crime rule; and (3) the trial court failed to conduct an adequate inquiry and hearing into his *pro se* posttrial claims of ineffective assistance of counsel and the case should be remanded pursuant to *People v. Krankel*, 102 Ill. 2d 181, 189 (1984). *People v. Cullum*, 2013 IL App (1st) 111776-U.

¶ 11    We affirmed defendant's convictions for one count of aggravated sexual assault, one count of aggravated kidnapping, and one count of aggravated possession of a stolen motor vehicle. *People v. Cullum*, 2013 IL App (1st) 111776-U, ¶ 75. We vacated the rest of

defendant's convictions and sentences under the principles of one-act one crime and because some of the offenses were lesser included offenses that should have been merged into the greater convictions. *People v. Cullum*, 2013 IL App (1st) 111776-U, ¶¶ 75, 76. Notably, we vacated the concurrent sentences imposed for aggravated criminal sexual assault and aggravated kidnapping counts, which were void pursuant to 730 ILCS 5/5-8-4(d)(2) (West 2012) and remanded the case to the trial court for resentencing defendant to mandatory consecutive sentences for the two offenses. *Id.* at ¶ 75.

¶ 12    On remand, the trial court held a new sentencing hearing after which it resentenced defendant to 10 years in prison for aggravated criminal sexual assault conviction to run consecutively with a 6-year sentence for the aggravated kidnapping count. The trial court also held that the sentences remaining for the other offenses were to run concurrent to these sentences. Defendant now appeals from the resentencing, contending that: (1) his original concurrent sentence of 10 and 6 years were not void and are, therefore, neither subject to increase nor appealable by the State [1]; (2) the resentencing court erred in increasing his "aggregate sentence" by 6 years on remand; and (3) defendant did not receive a fair sentencing hearing.

¶ 13                                    ANALYSIS

¶ 14    On appeal, we first consider defendant's contention raised in the supplemental briefs that his original sentences were not void and thus not subject to increase by this court or appealable by the State. Defendant agrees that his original concurrent sentences were improper and that he

_____

[1] The briefs in this appeal were filed before our supreme court issued its opinion in *People v. Castleberry*, 2015 IL 116916, while this case was pending on appeal. We allowed both the State Appellate Defender's Office and the State's Attorney's Office to file supplemental briefs with regard to the effect of *Castleberry* on this cause.

should have been sentenced to consecutive sentences. However, relying on *People v. Castleberry*, 2015 IL 116916, which abrogated *People v. Arna* 168 Ill. 2d 107, 113 (1995) and its holding that a void sentence can be challenged at any time, defendant urges this court to recognize that the original sentence should never have been addressed in our 2013 decision *People v. Cullum*, 2013 IL App (1st) 111776-U. Defendant asks this court to reinstate his admittedly improper concurrent sentences.

¶ 15　The State responds that this court's 2013 remand for the imposition of consecutive sentences, with which the trial court complied, is the law of the case and that is too late for defendant to now contest that finding. " '[T]he law of the case doctrine bars relitigation of an issue already decided in the same case.' " *People v. Cole*, 2016 IL App (1st) 141664, ¶ 27 quoting *People v. Tenner*, 206 Ill. 2d 381, 395 (2002); *People v. Patterson*, 154 Ill. 2d 414, 468 (1992) ("generally, a rule established as controlling in a particular case will continue to be the law of the case, as long as the facts remain the same"). Under the law of the case doctrine, an "issue of law decided on a previous appeal is binding on the circuit court on remand as well as the appellate court on a subsequent appeal." *People v. McDonald*, 366 Ill. App. 3d 243, 247 (2006). The purpose of the doctrine is to "protect settled expectations of the parties, ensure uniformity of decisions, maintain consistency during the course of a single case, effectuate proper administration of justice, and bring litigation to an end." *Id.* at 247; *Bond Drug Co. of Illinois v. Amoco Oil Co.*, 323 Ill. App. 3d 190, 197 (2001) (" 'The rule of the law of the case is a rule of practice, based on sound policy that, where an issue is once litigated and decided, that should be the end of the matter and the unreserved decision of a question of law or fact made during the course of litigation settles that question for all subsequent stages of the suit.' ") (quoting *Continental Ins. Co. v. Skidmore, Owings & Merrill*, 271 Ill. App. 3d 692, 696-97

(1995)).

¶ 16    A party seeking review of a decision of the appellate court has only two avenues for relief: (1) file a petition for rehearing or (2) seek leave to appeal to the supreme court. *People v. Cole*, 2016 IL App (1st) 141664, ¶ 28. **When, as in this case, a party exercises both such options and both petitions are denied, our decision becomes the law of the case, and binds the parties and the courts in any subsequent proceedings.** See *Harris Trust & Sav. Bank v. Otis Elevator Co.*, 297 Ill. App. 3d 383, 388 (1998). Therefore, our 2013 decision, *People v. Cullum*, 2013 IL App (1st) 111776-U, in which we found the trial court erred in imposing concurrent sentences and remanded for resentencing is the law of the case.

¶ 17    There are two exceptions to the doctrine of the law of the case: (1) where the supreme court makes a contrary ruling on the precise issue of law on which the appellate court had based its prior decision; and (2) where the appellate court finds its prior decision was erroneous, but only when the court remanded the case for a new trial of all the issues. *People v. Cole*, 2016 IL App (1st) 141664, ¶ 27; *Martin v. Federal Life Insurance Co.*, 164 Ill. App. 3d 820, 824. Neither of these exceptions applies here. The second exception, that of the appellate court finding its prior decision erroneous and the cause being remanded for a new trial on all issues, is clearly inapplicable because we do not find this court's prior decision was erroneous and we did not remand for a new trial on all of the issues.

¶ 18    The first exception, that of the supreme court making a contrary ruling on the precise issue of law, is inapplicable here because *Castleberry* abolished the void sentence rule in the context of a sentence being *increased*, while the sentence here, involved the imposition of the same sentences to run consecutively versus concurrently rather than a sentence increase. (Emphasis added.) See *People v. Cole*, 2016 IL App (1st) 141664, ¶ 27 (holding that the

imposition of consecutive sentences does not increase a defendant's original concurrent sentence when each consecutive sentence constitutes a distinct sentence for a particular offense and consecutive sentences may not be lumped together as one). In other words, it is the term of years a defendant is required to serve, rather than the manner in which those years are to be served, that is relevant to our evaluation of whether the trial court imposed a more severe sentence on remand. Here, the trial court did not increase defendant's sentence on remand but simply imposed the same sentences to be served consecutively. Because the precise issue in *Castleberry* was the abolishment of the void sentence rule, which is necessary only when the sentence is being increased, it is not the same issue in the case at hand where consecutive sentences do not increase a defendant's sentence but merely determines the manner in which the sentence is served. See *People v. Cole*, 2016 IL App (1st) 141664, ¶ 27. Therefore, the first exception to the "law of the case" does not apply in the instant case. Our judgment in *People v. Cullum*, 2013 IL App (1st) 111776-U is the law of the case where defendant failed to file a petition for rehearing or seek leave to appeal to the supreme court at the time the judgment was issued.

¶ 19    Regardless of the doctrine of the law of the case, however, we would still find that *Castleberry* is distinguishable from the case here and does not require this court to reinstate defendant's unauthorized previous sentences. In *Castleberry*, our supreme court abolished the void sentence rule, which stated " '[a] sentence which does not conform to a statutory requirement is void,' " abrogating *Arna*, 168 Ill. 2d 107. *Castleberry*, 2015 IL 116916, ¶¶ 13, 19, (quoting *Arna*, 168 Ill. 2d at 113). Our supreme court held that only the most fundamental defects, such as the lack of personal jurisdiction or the lack of subject matter jurisdiction, merit declaring a judgment void. *Castleberry*, 2015 IL 116916, ¶ 15.

¶ 20    Here, defendant does not contest that the trial court had jurisdiction over the defendant as well as over the subject matter. The trial court, therefore, had authority to enter convictions and sentences on the charged offenses, and its order sentencing defendant to concurrent terms of 10 years for aggravated sexual assault and 6 years for aggravated kidnapping when it should have ordered the sentences to be served consecutively was merely an error. See *People v. Davis*, 156 Ill. 2d 149, 156 (1993) ("jurisdiction or power to render a particular judgment * * * carries with it the power to decide wrong as well as to decide right"). This error did not divest the court of its jurisdiction. See *id.* at 156 (once jurisdiction is acquired, "no subsequent error or irregularity will oust the jurisdiction thus acquired," and "a court may not lose jurisdiction because it makes a mistake in determining either the facts, the law or both"). Therefore, the order was voidable and not void. For this reason, it falls outside the strictures of *Castleberry*, which abolished the void sentence rule. Unlike *Castleberry*, the case at bar deals with a voidable sentence that was remanded to the trial court for resentencing and which, upon resentencing, was not increased. See *People v. Cole*, 2016 IL App (1st) 141664, ¶ 32. Accordingly, because *Castleberry* does not apply to the instant case, defendant's request to have this court reinstate his concurrent sentences imposed in violation of 730 ILCS 5/5-8-4(d)(2) is denied.

¶ 21    We will now address the original claims raised by defendant in this appeal.

¶ 22    Defendant argues that the court abused its discretion in resentencing him to consecutive sentences of 10 years for aggravated criminal sexual assault and 6 years for aggravated kidnapping. Defendant contends that the new aggregate sentence was excessive and vindictive and that the trial court abused its discretion in declining to consider his post-sentencing mitigation and his expressions of remorse.

¶ 23    Defendant, relying on *North Carolina v. Pearce*, 395 U.S. 711 (1969), adopted by our

supreme court in *People v. Baze*, 43 Ill. 2d 298 (1969), and codified in section 5-5-4(a) of the Code (730 ILCS 5/5-5-4(a) (West 2012)), contends that when his original sentence was vacated on direct review, the trial court was prohibited from imposing a more severe sentence on remand and that in doing so, the trial court displayed vindictiveness. *Pearce* created the following requirement:

> "[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." *Pearce*, 395 U.S. at 726.

¶ 24    This rule was later limited by *Alabama v. Smith*, 490 U.S. 794, 799 (1989), such that whenever a court imposes a more severe sentence upon a defendant after a new trial in which the circumstances are such that there is a reasonable likelihood that an increase in sentence is the product of actual judicial vindictiveness to affirmatively state the reasons for the increase. *Id.* at 799.

¶ 25    Defendant's argument fails because it relies on the contention that his sentence was increased upon remand for resentencing. As discussed above, his sentence was not increased because each consecutive sentence constitutes a distinct sentence for each offense, and consecutive sentences may not be lumped together but merely determine the manner in which defendant will serve his sentences. See *People v. Cole*, 2016 IL App (1st) 141664, ¶ 52; see also *People v. Phelps*, 211 Ill. 2d at 14; *People v. Carney*, 196 Ill. 2d 518, 532 (2001); *People v.*

*Moore*, 177 Ill. 2d 421, 436 (1997). Defendant urges us to reduce his sentence for aggravated

criminal sexual assault to 6 years as it would be closest to the trial court's initial intention to

sentence him to serve 10 years in prison. However, his argument is unavailing, as his original

sentence, though unauthorized, was not a sentence of 10 years. Instead, after merging all the

offenses, it was a total sentence of 16 years of incarceration comprised of one sentence of 10

years for the aggravated sexual assault counts and one sentence of 6 years for aggravated

kidnapping counts that were erroneously ordered to be served concurrently. See, *e.g.*, *People v.*

*Phelps*, 211 Ill.2d 1, 14 (2004) (" '[e]ach conviction results in a discrete sentence that must be

treated individually' " (emphasis omitted))

¶ 26    Defendant argues that his sentence was excessive and that his good behavior while

incarcerated and his expressions of remorse should have merited a lesser sentence upon

resentencing. We disagree.

¶ 27    A trial court has broad discretionary powers in imposing a sentence, and its sentencing

decisions are entitled to great deference. *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). The

trial judge, having observed the defendant and the proceedings, is in a much better position to

consider factors such as the defendant's credibility, demeanor, moral character, mentality,

environment, habits, and age than the reviewing court, which must rely on the cold record on

appeal. *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010); *People v. Fern*, 189 Ill. 2d 48, 53

(1999). Where the sentence chosen by the trial court is within the statutory range permissible for

the pertinent criminal offense for which the defendant has been tried and charged, a reviewing

court may only disturb the sentence if the trial court abused its discretion in the sentence it

imposed. *People v. Jones*, 168 Ill. 2d 367, 374 (1995). A sentence that falls within the statutory

range is presumptively proper and does not constitute an abuse of discretion unless it is

manifestly disproportionate to the nature of the offense. *People v. Hauschild*, 226 Ill. 2d 63, 90 (2007).

¶ 28 Aggravated criminal sexual assault and aggravated kidnapping are both sentenced as Class X felonies. See 720 ILCS 5/11-1.30 (West 2012); 720 ILCS 5/10-2 (West 2012). The sentencing range for a Class X felony is 6 to 30 years in prison. See 730 ILCS 5/5-8-1(a)(3) (West 2012). Since defendant's sentences were required to run consecutively, he faced a minimum of 12 years and a maximum of 60 years in prison. The court resentenced defendant to 10 years consecutive with a 6 years which is in the low end of the possible sentences for two Class X offenses. Furthermore, the record reflects that defendant's crimes were egregious. Defendant stole his live-in girlfriend's rental car and later met A.B. at a party. Although she agreed to leave with him to run a brief errand, he started driving, around picking up other people and going to different places not agreed upon. Defendant refused A.B's repeated requests to let her out of the car or take her home. Defendant punched A.B., discarded her phone, side-swiped another car and forced her to perform oral sex upon him. When A.B. finally escaped, he repeatedly beat and dragged her back to the car until an eyewitness called the police. When the police arrived, defendant crashed the car in an attempt to hit the police car, and then fled from the scene. Defendant was ultimately apprehended by police on the top of a nearby condominium building.

¶ 29 Defendant maintains that his improved attitude exemplified by his desire to apologize to the victim and new mitigation evidence should have led to the minimum sentence on upon resentencing. But the trial court, having observed defendant and the proceeding had a far better opportunity to consider such factors as defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. *People v. Fern*, 189 Ill. 2d at 53.

Considering the totality of the circumstance, we cannot say that the trial court abused its discretion in fashioning defendant's sentence on remand.

¶ 30    Defendant also argues that the trial court did not afford him a full new sentencing hearing as required on remand, and instead, the trial court merely conducted a "*pro forma* proceeding" depriving him of a fair sentencing hearing. Specifically, defendant maintains that the court abused its discretion in failing to consider post-sentencing mitigating evidence. We disagree.

¶ 31    The record reflects that, following a hearing that lasted about one hour, the trial court, in its discretion, declined to consider post-sentencing mitigation and imposed its sentence: 10 years of imprisonment on the aggravated criminal sexual assault, with additional counts to merge into it, and 6 years on the aggravated kidnapping, with additional counts to merge in, to run consecutively. The State did not offer additional aggravation. Furthermore, defendant exercised his right of allocution and spoke about his recent steps toward rehabilitation. For instance, defendant stated the following:

> "I just wish, to, um, to give - I mean I will try to give mitigation of what - how I have been occupying my time.
>
> I have been in substance abuse programs. I have been maintaining a B average in school. I have the transcript right here with college. I have been creating inventions, your honor, that I think are very good, and I have elaborate business ventures, your honor. I have been studying the law.
>
> I am trying to get some kind of way for myself. I also wish - over that time, I also had time to reflect upon my actions within this situation, your honor, and I wish to—I wish that young lady was here so that I could formally apologize to her for my conduct of that evening, your honor, because I have learned during

drug treatment program to be empathetic toward [sic] another.

And I remember specifically you telling me during the last time it's always someone else's fault, and that's been playing in my head a lot, and I have to look at me and see what were my actions in those situations, your honor.

And I have seen like – I mean I brought a lot of things upon myself, you know, and I told myself time and time again I am not actually mad that I was incarcerated, but I was upset that it took me to become incarcerated to have this mindset that I have now to make me want to be a better me."

¶ 32    Contrary to defendant's contention, the trial court afforded defendant the opportunity to address the court extensively and directly regarding a myriad of issues and patiently attempted to direct defendant's attention toward the purpose of the hearing which was to resentence defendant. The court listened intently to defendant's arguments and entered the sentence it found appropriate. The hearing lasted nearly an hour with the trial court already being intimately familiar with defendant and the circumstances of the case. Accordingly, we cannot say that defendant was not afforded a fair resentencing hearing or that the trial court abused its discretion in fashioning defendant's sentence on remand.

¶ 33    Similarly, we reject defendant's argument that his counsel was ineffective for failing to object to the trial court's errors at sentencing. To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, "a defendant must prove that defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance created a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *People v. Graham*, 206 Ill. 2d 465, 476 (2003). Courts may resolve ineffectiveness

claims under the two-part *Strickland* test by reaching only the prejudice component, for lack of prejudice renders irrelevant the issue of counsel's performance. *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998); *Graham*, 206 Ill. 2d at 476 ("[I]f an ineffective-assistance claim can be disposed of because the defendant suffered no prejudice, we need not determine whether counsel's performance was deficient."); *People v. Hale*, 2013 IL 113140, ¶ 17.

¶ 34    Here, defendant's ineffective assistance of trial counsel claim fails because he cannot show that he was prejudiced by counsel's alleged deficient performance at resentencing. In order to establish the prejudice prong, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Graham*, 206 Ill. 2d at 476. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *People v. Enis*, 194 Ill. 2d 361, 376 (2000). Here, based on the totality of the circumstances and the egregious nature of defendant's actions, defendant cannot establish that there is a reasonable probability that the resentencing would have resulted in more lenient sentences for him. Accordingly, defendant's claim of ineffective assistance of counsel fails.

¶ 35                              CONCLUSION

¶ 36    Based on the foregoing, we affirm.

¶ 37    Affirmed.

NOTICE
The text of this order may
be changed or corrected
prior to the time for filing of
a Petition for Rehearing or
... the same.

Ex.4

No. 1-16-3149
Order filed September 28, 2018

First Division

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 10 CR 4692 |
| | ) | |
| DETRICK CULLUM, | ) | Honorable Geary W. Kull, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

JUSTICE Griffin delivered the judgment of the court.
Justices Pierce and Walker concurred in the judgment.

**SUMMARY ORDER**

¶ 1    Following a bench trial, defendant Detrick Cullum was convicted and sentenced to concurrent terms of 10 years for 3 counts of aggravated criminal sexual assault, 10 years for 2 counts of aggravated kidnapping, 10 years for 2 counts of kidnapping, 5 years for aggravated possession of a stolen motor vehicle, 4 years for possession of a stolen motor vehicle, 3 years for aggravated battery on a public way, and 2 years for aggravated fleeing or attempting to elude a police officer.

¶ 2    On appeal, we vacated two of defendant's convictions for aggravated criminal sexual assault and one of his convictions for aggravated kidnapping pursuant to the one-act, one-crime rule. *People v. Cullum*, 2013 IL App (1st) 111776-U, ¶¶ 73-74. We further vacated defendant's

convictions for kidnapping and possession of a stolen motor vehicle as they were lesser-included offenses that should have been merged into the greater offenses of aggravated kidnapping and aggravated possession of a stolen motor vehicle. *Id.* ¶ 74. We also vacated the concurrent sentences imposed on the remaining aggravated criminal sexual assault and aggravated kidnapping convictions, and remanded the case so that defendant could be resentenced to mandatory consecutive sentences for those offenses (730 ILCS 5/5-8-4(d)(2) (West 2008)). *Cullum*, 2013 IL App (1st) 111776-U, ¶ 75.

¶ 3    On remand, the trial court sentenced defendant to 10 years in prison for the aggravated criminal sexual assault conviction to run consecutive to a 6-year sentence for the aggravated kidnapping conviction. The trial court also held that the sentences for the other offenses were to be served concurrently. Defendant appealed arguing, in pertinent part, that because the void sentence rule had been abrogated in *People v. Castleberry*, 2015 IL 116916, his improperly imposed concurrent sentences should not have been addressed in this court's disposition of his prior appeal. We disagreed, finding that unlike *Castleberry*, defendant's case concerned voidable sentences that were remanded to the trial court for resentencing and which, upon resentencing, were not increased. See *People v. Cullum*, 2016 IL App (1st) 141546-U, ¶¶ 14-20.

¶ 4    On March 9, 2016, defendant filed the instant *pro se* petition for relief from judgment (see 735 ILCS 5/2-1401 (West 2016)), alleging that because *People v. Castleberry*, 2015 IL 116916, abolished the void sentence rule, his concurrent sentences should not have been vacated and should be reinstated. The circuit court *sua sponte* dismissed the petition on April 22, 2016. Defendant filed a *pro se* motion to reconsider, which the trial court denied on July 8, 2016. Defendant filed a *pro se* notice of appeal on November 14, 2016, and the State Appellate

No. 1-16-3149

Defender was appointed to represent him. Defendant then filed, through counsel, a motion to allow a late notice of appeal, which this court granted.

¶ 5     The State Appellate Defender, who represents defendant on appeal, has filed a motion for leave to withdraw as appellate counsel, citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987). Counsel has submitted a memorandum in support of the motion, stating that counsel has reviewed the record and concluded that an appeal would be without arguable merit. Counsel argues that defendant's claim is barred by *res judicata*. Copies of the motion and memorandum were sent to defendant, who was advised that he may submit any points in support of his appeal. He has responded arguing, *inter alia*, that *res judicata* does not bar his claim because newly decided constitutional rules apply to all criminal cases on pending on direct appeal.

¶ 6     After carefully reviewing the record in light of counsel's memorandum and defendant's response, we agree with counsel's conclusion. Thus, the motion of the State Appellate Defender for leave to withdraw as counsel is allowed and the judgment of the circuit court is affirmed.

¶ 7     This order is entered in accordance with Supreme Court Rule 23(c)(2), (4) (eff. Apr. 1, 2018).

¶ 8     Affirmed.

Ex. 5

defendant's concurrent sentences to be vacated. 2016 IL 116916, ¶24 (discussing *Arna* and noting that the appellate court is prohibited from "increasing a defendant's sentence on review"). If Rule 615(b) did not authorize the *Arna* court to vacate concurrent sentences then, and if the State lacks authority to appeal an erroneous sentencing order to the appellate court, then there is no authority for what this Court has done here.

*Castleberry* did not distinguish *Arna*, which addressed concurrent sentences that were required to be consecutive, yet this Court purports to distinguish Cullum's case from *Castleberry* on precisely this basis. There is no basis for this distinction.

As noted in this petition, this Court's Order in Cullum's case substantially followed the holding in *People v. Cole*, 2016 IL App (1st) 141664, but the analysis in *Cole* is faulty and should not be followed. Recently, another division of this Court reached the exact opposite conclusion of this Court and the *Cole* Court in an unpublished decision, *People v. Taurean Lewis*, 2015 IL App (1st) 130998-UB.[1]

In *Lewis* the circuit court imposed concurrent 10-year sentences, but consecutive sentences were required. On appeal, the State relied upon *Arna* and argued that the Appellate Court had authority to correct the "void" sentences. The Appellate Court agreed with the State, and, as in Cullum's case, it vacated Lewis's sentences and remanded for resentencing. 2015 IL

---

[1]Appellate counsel is referencing *Lewis* to show what the Supreme Court did in that case, and recognizes that the case is not precedential as legal authority under Sup. Ct. R. 23.

Ex. 5

App (1st) 130998-U, ¶¶70, 73.

✱     *Castleberry* was decided several months after *Lewis*. In March 2016,
the Illinois Supreme Court allowed Lewis to file a *pro se* late petition for
leave to appeal. *People v. Lewis*, No. 120603 (Ill. Sup. Ct. Mar. 25, 2016)
(miscellaneous announcements).[2] On May 25, 2016, the Supreme Court
denied leave to appeal, but entered a supervisory order directing the
Appellate Court to vacate its August 24, 2015 Rule 23 Order and reconsider
its judgment in light of *Castleberry*. *People v. Lewis*, No. 120603 (Ill. S. Ct.
May 25, 2016) (leave to appeal dispositions)[3]

✱     The Appellate Court then entered a new unpublished Order in *Lewis*,
2015 IL App (1st) 130998-UB, reversed its prior decision and held that,
"[G]iven the abolition of the void sentence rule, the State is barred from
challenging defendant's sentence in this appeal." 2015 IL App (1st) 130998-
UB, ¶73.

Given that *Arna* is indistinguishable from Cullum's case, and given the
manner in which the Supreme Court ordered the *Lewis* Court to reconsider
its prior decision in light of *Castleberry*, Cullum also petitions this Court to
reconsider its decision in his case.

C.     Conclusion

Detrick Cullum asks this Court to reconsider its holding that

---

2. Available at http://www.illinoiscourts.gov/SupremeCourt/Announce/2016/032516.pdf
(last accessed August 22, 2016).

3. Available at http://www.illinoiscourts.gov/SupremeCourt/PLA_Ann/2015/052516.pdf
(last accessed August 22, 2016).

Ex. 6

**Ⓐ** Neutral
As of: August 15, 2019 5:25 PM Z

# People v. Lewis

Supreme Court of Illinois

May 25, 2016, Decided

No. 120603

**Reporter**
2016 Ill. LEXIS 687 *; 50 N.E.3d 655; 401 Ill. Dec. 513; 2016 WL 3041840

People State of Illinois, respondent, v. Taurean Lewis, petitioner.

**Notice:** DECISION WITHOUT PUBLISHED OPINION

**Prior History:** [*1] Leave to appeal, Appellate Court, First District. (1-13-0988).

_People v. Lewis, 2015 IL App (1st) 130998-U, 2015 Ill. App. Unpub. LEXIS 1874 (2015)_

## Core Terms

appellate court

## Opinion

Petition for leave to appeal denied.

In the exercise of this Court's supervisory authority, the Appellate Court, First District, is directed to vacate its judgment of August 24, 2015, in People v. Lewis, case No. 1-13-0998. The appellate court is directed to reconsider its judgment in light of _People v. Castleberry, 2015 IL 116916, 398 Ill. Dec. 22, 43 N.E.3d 932 (11/19/15)_, to determine whether a different result is warranted.

End of Document

Ex. 6 (See asterisk)

**A** Neutral
As of: August 15, 2019 5:32 PM Z

## People v. Lewis

Appellate Court of Illinois, First District, Fifth Division

July 22, 2016, Decided

No. 1-13-0998

### Reporter

2016 IL App (1st) 130998-UB *; 2016 Ill. App. Unpub. LEXIS 1511 **

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TAUREAN LEWIS, Defendant-Appellant.

**Notice:** THIS ORDER WAS FILED UNDER _SUPREME COURT RULE 23_ AND MAY NOT BE CITED AS PRECEDENT BY ANY PARTY EXCEPT IN LIMITED CIRCUMSTANCES ALLOWED UNDER _RULE 23(e)(1)_.

**Prior History:** [**1] Appeal from the Circuit Court of Cook County. No. 12 CR 4547. Honorable Clayton J. Crane, Judge Presiding.

_People v. Lewis, 2015 IL App (1st) 130998-U, 2015 Ill. App. Unpub. LEXIS 1874 (2015)_

**Disposition:** Affirmed.

## Core Terms

sexual assault, trial court, sentence, closing argument, assault, opening statement, prejudicial, swab, sex, propensity, apartment, other-crimes, rape, chain of custody, clothes, argues, buccal, pants, plain error doctrine, evidence of a crime, attorneys, crying, rights, night, probative value, admonished, aggressive, concurrent, similarity, convicted

**Judges:** PRESIDING JUSTICE DELORT delivered the judgment of the court. Justices Cunningham and Harris concurred in the judgment.

## Opinion

### ORDER

**Held:** We affirm defendant's jury conviction on two counts of criminal sexual assault. We reject the State's claim that we must vacate defendant's

concurrent sentence of two 10-year prison terms and remand this cause for resentencing in accordance with _section 5-8-4_ of the Unified Code of Corrections (_730 ILCS 5/5-8-4_ (West 2012)).

[*P2] Following a jury trial, defendant Taurean Lewis was found guilty of two counts of sexual assault and sentenced to two concurrent prison terms of 10 years. On appeal, defendant contends that (1) the trial court erroneously permitted the State to introduce highly prejudicial other crimes evidence; (2) the court improperly allowed forensic evidence purporting to identify him as the perpetrator of a previously committed sexual assault; and (3) the State made improper and prejudicial remarks during its opening statement and closing argument. In addition, the State asks this court to remand the cause for resentencing because the concurrent sentence imposed [**2] does not conform to the statutory mandate requiring consecutive sentencing.

[*P3] On August 24, 2015, we affirmed defendant's convictions, but remanded for resentencing in accordance with _section 5-8-4_ of the Unified Code of Corrections (Corrections Code) (_730 ILCS 5/5-8-4_ (West 2012)). On May 25, 2016, the supreme court denied defendant's petition for leave to appeal but directed this court to vacate our judgment in the case and reconsider the matter in light of _People v. Castleberry, 2015 IL 116916, 398 Ill. Dec. 22, 43 N.E.3d 932_, to determine whether a different result is warranted. In accordance with the supreme court's direction, we vacate our prior judgment and reconsider the matter in light of _Castleberry_. After reconsideration, we reject the State's request that we remand this cause for resentencing and affirm the judgment of the trial court.

[*P4] BACKGROUND

[*P5] The State charged defendant, _inter alia_, with two counts of criminal sexual assault in connection with a February 6, 2012, incident involving the victim, K.M.